## GREENWOOD & TYRRELL v. HELM.*
### (No. 7171.)

(Court of Civil Appeals of Texas. San Antonio. June 4, 1924. On Motion for Rehearing June 18, 1924.)

1. **Mines and minerals ⚮78(1)—Lease held to impose no obligation on lessees to drill for oil and gas.**

Where an oil and gas lease provided no penalty for failure of the lessees to drill except forfeiture of their right if not exercised within a designated time, but gave them the right to make as many attempts as desired to find oil or gas, and the lessor was paid a substantial cash consideration, lessees had pure option and were not obliged to drill.

2. **Mines and minerals ⚮78(1)—Oil and gas lease, paying only royalties, implies obligation to develop with reasonable diligence.**

Where sole consideration for lease of mineral rights to lands is the payment of royalties, and the contract is silent as to nature and degree of development, there is is an implied obligation that the lessee will develop with reasonable diligence.

3. **Mines and minerals ⚮74 — Assignee of lease steps into shoes of lessee as to liabilities.**

Where assignees from a prior assignee of a lease accepted the original lease, they stepped into the shoes of the original lessee, and the liabilities under the lease passed to all the successive assignees.

4. **Mines and minerals ⚮74—Agreement of assignee of oil and gas lease to pay money out of first oil produced held not to obligate to drill or pay money.**

Where the assignment of an oil and gas lease for a cash payment provided for the payment of an additional sum to the assignor to be paid out of the first oil produced above royalties reserved to the original lessor, the assignees were not required to drill in any event or pay the additional sum if oil was not produced in such quantity to yield that sum.

5. **Mines and minerals ⚮74—Subassignees of lease held to have acquired option of original lessee as to drilling.**

Where the original lessee paid a valuable consideration not to be required unconditionally to drill, and his assignee sold the lease for a cash payment and for a further payment to be made out of the first oil produced above the royalties reserved to the original lessors, he sold the option not to be required to drill to the subassignees, who by accepting it assumed the identical obligations and benefits of the original lessee.

6. **Mines and minerals ⚮74—Assignees of lease held justified in surrendering option to drill or not to drill.**

Where original lessee paid for an option to drill or not, and his assignee assigned the lease including such option for a payment in cash and an agreement to pay a further sum out of the first oil produced above royalties reserved to the original lessor, on a showing that the land in question was encircled by dry holes, that the only way it could be shown that it would not produce the specified amount of oil was to drill wells all over the land, subsequent assignees were justified in surrendering their option.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by T. A. Helm against Greenwood & Tyrrell. From judgment for plaintiff, defendants appeal. Reversed and remanded.

R. M. Rowland and J. F. O'Brian, both of Fort Worth, for appellants.

Beall, Worsham, Rollins, Burford & Ryburn and A. S. Rollins, all of Dallas, for appellee.

SMITH, J. The track of land over which this controversy arose, being 32 acres out of the W. C. Sartor pre-emption, in Eastland county, was owned by two cotenants. Each cotenant executed an oil and gas lease upon the land to Charles Pettit and another. These leases were not in the usual form of such instruments. They simply conveyed to the lessee the exclusive right to drill and operate for oil, gas, or other minerals in the land, and "to make as many attempts, if and as lessee shall desire, to find oil or gas in paying quantities on, in, or under said premises," "provided," in one of the instruments. "lessees have begun operations in any such

attempt within sixty days from this date," and in the other, that "lessee may begin operation in any such attempt at any time within four years from May 15, 1917." The forfeiture clause in the lease is, "and if such operations shall not be begun on or before the expiration of" sixty days in one case and by May 15, 1921, in the other, "this lease shall wholly terminate; provided if prior to such termination said lessee shall have begun operations in an attempt to find oil or gas, then lessees shall have the right to continue such attempt with reasonable diligence, as also to make as many additional attempts to find oil or gas in paying quantities as lessees please."

Both leases contained a further stipulation that if any well should be brought in on adjacent premises, within 200 feet of these premises, and should produce as much as 200 barrels of oil per day for thirty consecutive days, then and in such event "lessees agree that lessees will with all reasonable diligence begin and prosecute the drilling of a well on said leased premises in a faithful effort to find and produce therefrom oil in paying quantities."

These leases were assigned by the original lessess to appellee, Helm, who in turn assigned them to appellants, Greenwood & Tyrrell, the consideration for the latter assignment being:

"The consideration of this conveyance of assignment is the payment of sixteen thousand ($16,000) dollars in cash by the said C. F. Greenwood and C. R. Tyrrell, receipt whereof is hereby acknowledged, and in addition thereto the payment of the sum of thirty-two hundred ($3,200) dollars to be paid out of the first oil produced from said lease over and above the royalty reserved to the original lessors; and in addition thereto the delivery to the grantor, his heirs, executors, administrators and assigns, free into tanks or pipe lines, one-sixteenth of all oil or gas produced or saved from said lease, or any part thereof, without any expense to the grantor, whatever."

Within the first year after this assignment was made the lands on all sides of the leased premises now in dispute were drilled for oil and gas, without getting production, thus encircling these premises with "dry holes," and, "as a practical matter," condemning the land in question as being dry territory. Naturally, the lessees, who had not theretofore drilled the land, did not thereafter do so. Nor did they pay Helm the item of 3,200 to be paid out of the first oil produced from said lease over and above the royalty reserved to the original lessors," for the recovery of which Helm brought this suit. The cause was tried to the court, without a jury, and from a judgment in Helm's favor Greenwood & Tyrrell have appealed.

Appellee contends that appellants expressly, or, in the alternative, impliedly obligated themselves to actually drill the land in order to procure the oil with which to pay the item of $3,200, recited as a part of the consideration to be paid in oil. On the other hand, appellants contend that their obligation to drill the land was no greater than that imposed upon the lessees by the terms of the original leases, that that obligation was not enhanced or strengthened by the provisions of Helm's assignment to them. Thus the controlling issue is presented.

[1] It may as well be said, at once, that in our opinion the original leases imposed no obligation whatever upon the lessees to exercise their option and drill the land. By express provisions the lessees were given the right merely "to make as many attempts if and as lessee shall desire to find oil or gas in paying quantities, on, in, or under said premises." In no event were they required to drill, and no penalty whatever was provided in the lease for failure to drill except a forfeiture of the right if not exercised within the time designated in the leases. This constituted a pure option on the part of the lessees, for which they paid a very substantial consideration in cash.

Of course, there existed the express obligation, which would have been implied had it not been expressed, to drill to protect the land, during the life of the lease, against offsets or drainage, but these were contingencies which did not arise, and this question does not enter the case.

[2] If the sole consideration for the conveyance of mineral rights to land is the payment of royalties from the minerals taken therefrom, and the contract is silent as to the nature and degree of development to be made by the lessee, there is an implied obligation that the latter will develop with reasonable diligence. Jacobs v. Robinson (Tex. Civ. App.) 241 S. W. 241, and authorities there cited. But this obligation was avoided in this case by the payment of a substantial cash consideration to the lessor, whereby the latter was remitted to the express provisions of the contract for relief from the lessees' slothfulness. So from these rules we have concluded that nothing contained in the original lease obligated the original lessee, or appellants as the remote assignees thereof, to drill the land at any time, or in any event, except to offset producing wells on adjacent property, a contingency which did not happen.

[3] So, if appellants assumed the unconditional obligation to drill, such obligation must arise alone out of the contract of assignment, since appellants by accepting the original lease simply stepped into the shoes of the original lessee, whose liabilities thereunder passed to the successive assignee, which include appellee as well as appellants. Thornton Oil & Gas, § 230 et. seq. We will consider the assignment then, to ascertain if appellants' obligation to drill was enlarged thereby.

[4] As has been shown, it was provided in the assignment, simply that, as a part of the consideration therefor, the assignee, after paying $16,000 in cash, would pay an additional sum of $3,200, "to be paid out of the first oil produced from said lease over and above the royalty reserved to the original lessors." Certainly in this provision the assignees did not expressly obligate themselves to drill the land in any and every event, or to pay the additional sum in cash if oil was not produced in sufficient quantity to yield that sum. So if this obligation existed at all, it was not expressed, but must have arisen by implication.

[5] Nor can any such implication arise from the contract itself, as the natural and reasonable result of the language used therein. To warrant such implication the contract must be such as reason and justice dictate, and which the law may safely presume the parties undertook to perform. The situation of the parties, the nature and hazards of the undertaking, the circumstances surrounding the whole transaction, and the justness and reasonableness of the obligation to be implied, must point with reasonable certainty to an intention of the parties to bind the assignees to an unconditional obligation to drill the land for the purpose of producing sufficient oil to yield the additional consideration of $3,200.

We do not think such a case is made here. The original lessee did not unconditionally obligate himself to drill; he paid a valuable consideration to be relieved of that very obligation, and for the privilege of himself determining from subsequent conditions whether to hazard further large sums of money in developing the land upon the chance of getting oil. It was this very option that appellee sold to appellants, who by accepting it assumed the identical obligations and acquired the identical benefits imposed upon or accruing to the original lessee, and passed on to them by appellee.

It is not conceivable, certainly it is not reasonable or just to assume, that appellants, after paying a relatively enormous sum for the pure option, would in the same transaction surrender that option and assume in lieu thereof a specific and unconditional obligation to expend further enormous sums, regardless of the probability of realizing any profits out of the undertaking. No such obligation being expressed, neither reason nor justice requires, nor will they permit, such implication to be read into the contract of assignment.

[6] So, when it was shown upon the trial that the leased land was subsequently encircled by dry holes and was, "as a practical matter," condemned as dry territory, and that "the only way by which it could be conclusively established that the assigned premises would not produce $3,200 worth of oil was to drill wells all over said 32 acres," we think it clear that appellants were justified in surrendering their option to drill, or not to drill. This freedom of choice was assigned to appellants by appellee himself, who was fully aware of the conditions under which they contracted, and who is presumed to have known that in the absence of an express agreement to that end appellants would not expend large sums in exploiting territory shown, in the meantime, "as a practical matter," to be barren.

The judgment of the court below must be reversed, and, as the essential facts were so clear that they were agreed upon by the parties, judgment will be here rendered for appellants.

### On Motion for Rehearing.

In the original disposition of the appeal it was ordered that the judgment in favor of appellee be reversed and judgment here rendered in favor of appellants. Upon reconsideration, we have reached the conclusion that we erred in here rendering judgment. The contract on which the suit is based is still existing, so far as the record shows, and we cannot say that conditions may not so change as to authorize a renewal of the litigation, if this action is dismissed, or further prosecution, if it is not dismissed. Appellee has not asked for this revision of our former judgment, so the order is made upon our own motion.

Our former judgment will be set aside, and it is now ordered in lieu thereof that the judgment of the court below be reversed, and the cause remanded, for such further proceedings as may be had, consistent with the opinion herein.