Matthews v. Ramsey-Lloyd Oil Co.

---

No. 26,669.

W. H. MATTHEWS, *Appellant,* v. THE RAMSEY-LLOYD OIL COMPANY, and A. E. LLOYD et al., as Trustees of THE RAMSEY-LLOYD OIL COMPANY, *Appellees.*

SYLLABUS BY THE COURT.

1. MINES AND MINERALS—*Oil and Gas Lease—Construction—Obligation to Develop—Rights of Assignee.* Where by the terms of a gas and oil lease the lessee was excused from drilling and developing the property on the payment of an annual rental of one dollar per acre, and the lease provided for its subdivision and assignment in parcels, and where such lease passed from one holder to another by assignment, the consideration for the last assignment being $12,000 in cash and an interest up to $30,000 in whatever oil might be produced on the leased premises, and where no oil was produced on the property and the last assignee gave no specific undertaking to drill and develop the property, it is held that the last assignee acquired the lease on the same terms as its predecessors in interest, and the last assignee was under no implied obligation to drill and develop the property, nor did its failure to do so mature the conditional obligation to pay the last assignor the sum of $30,000.

2. SAME—*Merger of Interests—Rights of Intermediate Holder.* The fact that one of the original owners and lessors of the property covered by an oil and gas lease eventually becomes the assignee of the lease will not effect a merger of his interests to the prejudice of an intermediate holder of the lease who on assigning it to another reserved to himself a specified interest in whatever oil might be produced on the property.

Estates, 21 C. J. p. 1035 n. 38.   Mines and Minerals, 27 Cyc. p. 727 n. 64.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed May 8, 1926. Affirmed.

*Robert C. Foulston, W. E. Holmes, D. W. Eaton, George Siefkin* and *Sidney L. Foulston,* all of Wichita, for the appellant.

*John J. Jones,* of Chanute, *B. R. Leydig* and *K. M. Geddes,* both of El Dorado, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This action arose over the construction of a contract whereby plaintiff sold and assigned an oil and gas lease to the defendant corporation.

On October 23, 1922, G. L. Ramsey and certain other owners and tenants in common of 160 acres of Butler county land (S½ NE¼, and S½ SE¼, 1-24-5 east) executed a lease of it to one S. W. Preston for the purpose of mining and operating for oil and gas. The lease term was for five years and as long thereafter as oil or gas should be produced on the premises.

One dollar was paid by the lessee, and further additional considerations were specified, viz.:

"This lease is given for a well to be started on or before October 23, 1922, in the southwest corner of the northwest quarter of section 6, township 24, range 6 east, and containing 160 acres, more or less." [This proposed well was to be drilled on land near by but not included in this lease.]

"In consideration of the premises the said lessee covenants and agrees:

"1st. To deliver to the credit of lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from said leased premises.

"2d. To pay the lessor one-eighth (⅛) of all gas, the gas from each well where gas only is found, while the same is being used off the premises.

"If no well be commenced on said land on or before the 23d day of October, 1923, this lease shall terminate as to both parties, *unless the lessee on or before that date shall pay or tender to the lessor,* or to the lessor's credit in the Butler County State Bank . . . *the sum of one hundred sixty ($160) dollars, which sum shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively.* And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred." [Italics ours.]

The lease also provided for subdivision into parcels and their

sale and assignment, and provided for the payment of *pro rata* rentals due the lessor thereunder.

The lessee, Preston, assigned his rights in eighty acres of the leased premises to plaintiff W. H. Matthews; and on December 1, 1922, Matthews in turn sold and assigned his interest therein to the Ramsey-Lloyd Oil Company, a corporation. The consideration for the sale and assignment of the lease from Matthews was as follows:

"Second party agrees to pay upon delivery of assignment of said above-described lease the sum of $12,000 cash and to pay a further sum of $30,000 out of one-half of the seven-eighths (⅞) of first oil produced from said described property. The last condition to be made a part of said assignment."

The assignment itself in part recited:

"Now, therefore, for and in consideration of one dollar (and other good and valuable considerations), the receipt of which is hereby acknowledged, the undersigned, the present owner of the said lease and all rights thereunder or incident thereto, does hereby bargain, sell, transfer, assign and convey unto The Ramsey-Lloyd Oil Company all of his right, title and interest of the original lease and present owner in and to the said lease and rights thereunder in so far as it covers the . . . [80 acres described]; as a further consideration said first party is to be paid $30,000 out of one-half of the seven-eighths of first oil produced under said lease. . . .

"(Signed)    W. H. MATTHEWS."

The property was not developed for oil or gas. One oil well of fair capacity was developed on other property in the vicinity, and several dry holes were drilled near by. In 1923, the Ramsey-Lloyd Oil Company was dissolved by resolution of its stockholders and by forfeiture or surrender of its charter; and its affairs (other than this matter in controversy) were wound up and its assets sold and the proceeds distributed among the stockholders. G. L. Ramsey purchased the lease.

On the assumption that the contract of sale and assignment of the lease by plaintiff to the Ramsey-Lloyd Oil Company required that company to prospect for and develop oil on this eighty acres in sufficient quantities so that out of one-half of seven-eighths of such production a fund would be created out of which $30,000 might be available to pay the plaintiff, and that the failure of the corporation to prospect for or develop oil on the leased property, together with the dissolution of the corporation and the sale of the lease to G. L. Ramsey, matured and perfected an unqualified obligation to pay plaintiff the sum of $30,000, this action was begun.

Plaintiff's amended petition and exhibits, together with a motion and order to substitute as defendants the last board of directors and *ex officio* trustees of the defunct corporation, and plaintiff's supplemental petition, developed the facts upon which plaintiff relied for recovery.

Defendants' demurrer to plaintiff's petition was overruled, and they answered admitting most of plaintiff's material allegations, but denying their legal effect and denying liability for $30,000 or any other sum.

The parties adduced considerable evidence about which there was little dispute. It was shown that one oil well near by on adjacent property east of the leased premises had been developed in December, 1922, but it was not very profitable. It cost $17,000; its production proceeds over royalty for 1923 were $20,059.99; its expense of operation, taxes, etc., was not shown, and its production was diminishing. On the northwest, south, and east of that one well, three dry holes had been drilled; at greater distances other dry holes had resulted from drilling thereabout, and geologists and oil producers and explorers of experience testified that in their opinion the incurring of further expense in drilling in that locality would be ill-advised and likely to be unprofitable.

Judgment was entered for defendants.

Plaintiff assigns several errors, but the propriety of the judgment entered below chiefly depends upon the proper construction of the contract under which plaintiff assigned his interest in the lease to the Ramsey-Lloyd Oil Company.

Just what was the nature of the contract between Matthews and the Ramsey-Lloyd Oil Company? Was it anything more than an ordinary transaction of bargain and sale whereby the ownership of an oil and gas lease passed by assignment from assignor to assignee? The stipulated consideration was the substantial one of $12,000 in cash, together with the reserved condition that the assignor should receive a sum up to $30,000 out of whatever oil might be produced on the leased premises. There was no specific promise on the part of the Ramsey-Lloyd Oil Company that it was to drill for oil on the premises, and the circumstances of the sale and assignment were not fairly susceptible of an interpretation that plaintiff's assignee made any implied covenant to drill for oil. The rights and duties of the holder of the lease were specifically defined by the lease itself. Preston, the original lessee, was not required to drill.

Matthews v. Ramsey-Lloyd Oil Co.

He could avoid that expense and yet keep the lease alive by paying a dollar per acre per annum. When plaintiff by assignment acquired Preston's interest in the lease, his rights and duties were the same as those of Preston. Plaintiff was not required to drill; he could keep the lease alive by paying $80 per annum. And this court can perceive no added or different obligation to prospect and develop for oil devolving upon the Ramsey-Lloyd Oil Company as owner of the lease than that which attached to its ownership when it belonged to Preston or when it belonged to plaintiff. There is a seeming lack of logic or of good conscience in the attitude of plaintiff. In effect, he says to his vendee: "I sold you an oil lease which by its terms gave you the option to defer development on payment of a dollar an acre per annum, but by your bargain with me, in which you paid me $12,000 in cash and promised to give me $30,000 worth of oil out of the first production from that lease, the stipulation in the lease itself which permitted you as my successor in title to defer development didn't mean anything. That was a highly advantageous clause in the lease when I owned it, but it became a delusion and a snare when you acquired it."

Plaintiff presses upon our attention the rule of law that where there is a contract to pay a consideration out of a particular fund, the obligor is under an implied duty to take the proper steps to cause such fund to be created. But here the main consideration was paid in cash, $12,000; and now to hold that the assignee took the lease subject to an implied duty to drill and develop the property, would render nugatory one of the most valuable privileges the assignee paid its money for—that of delaying development by the payment of an annual rental of $80.

Since the lease which was the subject of sale and assignment between these litigants contained an express stipulation covering the matter of delay in development by payment of a stipulated annual rental, it would be peculiarly unjust to read into the contract of assignment an implied covenant that the new assignee of the lease took it under an obligation vastly more arduous than any under which it had been held by the original lessee or by the plaintiff in this action. This conclusion was reached by the Texas court of civil appeals in the analogous case of *Greenwood & Tyrrell v. Helm*, 264 S. W. 221, where one Pettit had obtained an oil and gas lease on thirty-two acres. Pettit assigned the lease to Helm, and Helm in turn sold and assigned it to Greenwood & Tyrrell for a considera-

tion of $16,000 in cash, and the further consideration of $3,200 to be paid out of the first oil produced on the lease, and the still further consideration of one-sixteenth of whatever oil or gas might be produced or saved from the property. A number of dry holes were drilled on adjacent and encircling property which virtually condemned the land in question as unproductive territory, and Greenwood & Tyrrell did no drilling, and of course they did not pay the $3,200 which was to be realized out of the first oil produced on the leased premises; so on the assumption that their failure to drill matured their obligation, Helm sued for that amount. The court of appeals ruled against him, pointing out that the contract was quite different from one where the only substantial consideration for the lease or its assignment was to be realized out of a fund which was to be created, that the substantial consideration was the $16,000 which Helm had received from defendants. The court said:

"Nor can any such implication arise from the contract itself, as the natural and reasonable result of the language used therein. . . . The original lessee did not unconditionally obligate himself to drill; he paid a valuable consideration to be relieved of that very obligation, and for the privilege of himself determining from subsequent conditions whether to hazard further large sums of money in developing the land upon the chance of getting oil. It was this very option that appellee sold to appellants, who by accepting it assumed the identical obligations and acquired the identical benefits imposed upon or accruing to the original lessee, and passed on to them by appellee. It is not conceivable, certainly it is not reasonable or just to assume, that appellants, after paying a relatively enormous sum for the pure option, would in the same transaction surrender that option and assume in lieu thereof a specific and unconditional obligation to expend further enormous sums, regardless of the probability of realizing any profits out of the undertaking. No such obligation being expressed, neither reason nor justice requires, nor will they permit, such implication to be read into the contract of assignment." (p. 223.)

Appellant directs our attention to an earlier case in the same court, *Empire Gas & Fuel Co. v. Pendar*, 244 S. W. 184, where the lessee had unqualifiedly bound itself to commence drilling within sixty days, and agreed that if the first boring should turn out to be a dry hole another well should be commenced within eighty days, and so on, in continuous drilling, one hole after another "until such time as the leased premises shall have been thoroughly developed for oil and gas. If oil and gas is found in one or more wells upon the leased premises the lessee agrees thereafter to operate the same with diligence." The consideration for that lease was a specified royalty and $60,000 to be paid thus: $5,000 to be paid in cash on

approval of the title by the lessee's attorneys; $25,000 to be paid in four installments evidenced by notes maturing *seriatim* six months apart, and $30,000 in oil "to be produced from the leased premises by the lessee if the same is so produced." The lessee never paid any part of the stipulated consideration and did no drilling. Plaintiff sued and recovered the full amount of the consideration. Touching that part of the contract which conditionally obligated the lessee to pay $30,000, the court said:

"Was the plaintiff entitled to judgment for the $30,000 which defendant had by the terms of the contract agreed to pay in oil 'if oil should be produced from the leased premises' by defendant, upon a showing that defendant had refused and was still refusing to recognize the contract and to explore for the oil on the leased land as it had obligated itself to do? This question, we think, should be answered in the affirmative. . . . In the specific case, appellant agreed to drill upon and develop the leased premises for the production of oil. Its obligation to that effect was not merely implied, but was express and definite." (p. 191.)

In *Greenwood & Tyrell v. Helm,* supra, the same learned court of appeals discovered no analogy worth while to discuss between it and *Empire Gas & Fuel Co. v. Pendar,* supra, which it had decided two years before; and still more dim is any analogy between the Pendar case and the one which now concerns us. In the Pendar case there was a positive agreement to drill, and to keep on drilling one hole after another until the property was fully developed. In the present case drilling was expressly excused on the payment of $80 per annum, and that was one of the privileges plaintiff's assignee bought and paid for.

We have also carefully noted another case pressed on our attention by appellant, *Pritchard v. McLeod,* 205 Fed. 24, which space forbids us to discuss further than to say that while it is an instructive case and well decided it is fundamentally different in material respects from the one under present review.

This conclusion virtually disposes of this appeal. The fact that the Ramsey-Lloyd Oil Company has been dissolved is immaterial. The lease was not assigned by plaintiff with any restrictions upon its subsequent alienation. Nor is it material that G. L. Ramsey, part owner of the fee, has acquired the lease. If oil is developed on this property, the interest in the first production, up to the sum of $30,000 which plaintiff reserved to himself when he sold the lease, can readily be protected either at law or in equity so far as Ram-

sey's dual interest as part lessor-owner and as assignee of the lease is·concerned. Equity would not countenance a merger of interests by Ramsey to the prejudice of plaintiff. (See *Heston v. Finley*, 118 Kan. 717, 723, and citations, 236 Pac. 841.)

The judgment is affirmed.