## PHOENIX OIL CO. v. MID-CONTINENT PETROLEUM CORP.

No. 25933. March 17, 1936.

Rehearing Denied Sept. 29, 1936.

Pce, Lundy & Morgan and John E. Curran, for plaintiff in error.

J. C. Denton, R. H. Wills, J. H. Crocker, I. L. Lockewitz, and J. P. Greve, for defendant in error.

PER CURIAM. This appeal is prosecuted by the Phoenix Oil Company, a corporation, plaintiff in error, plaintiff below, to reverse a judgment of the district court of Tulsa county, wherein Mid-Continent Petroleum Corporation, defendant in error, defendant below, obtained a judgment sustaining its demurrer to the petition of the plaintiff in error and dismissing its petition with prejudice. Parties will be hereinafter referred to as they appeared in the trial court.

The assignments of error raise but one proposition, namely, as to whether the petition stated facts sufficient to constitute a cause of action, or causes of actions, in favor of the plaintiff. By its action, plaintiff sought to recover the sum of $75,000 for the alleged failure of the defendant to drill a certain well on certain lands in accordance with the terms of a certain contract dated, entered into, and executed on the 20th day of August, 1926, by and between Omar Oil & Gas Company, a corporation, former name of the plaintiff, and Cosden Oil & Gas Company, a corporation, alleged predecessor of the defendant. This contract was attached to the petition as an exhibit and was made a part of said petition.

The contract is as follows (omitting the first, fifth, and seventh paragraphs of the stipulation and the acknowledgments as not material to the issues presented):

"This agreement made and entered into on this 20th day of August, 1926, by and between Omar Oil & Gas Company, a corporation, organized and existing under and by virtue of the laws of the state of Delaware, duly licensed to transact business in the state of Oklahoma, with its principal office in Pittsburgh, Pennsylvania, party of the

first part, and Cosden Oil & Gas Company, a Delaware corporation, party of the second part.

"Witnesseth: That whereas, first party is the owner of good, valid and subsisting oil and gas mining lease in Pottawatomie county, Okla., covering and embracing the following described land, to wit:

"East half of northwest quarter of (E. 2 N. W. 4) section 14, township 7 north range 4 east, except a certain tract comprising 1½ acres out of northwest corner 210 feet east and west and 315 feet north and south,

"Now, therefore, it is agreed between the parties hereto as follows: * * *

"(2) Upon acceptance of first party's title, second party agrees to pay unto first party the sum of fifteen thousand ($15,000) dollars, whereupon first party shall execute and deliver unto second party good and valid assignment conveying unto second party an undivided one-half interest in and to the leasehold above described. As part consideration for the said assignment second party hereby further agrees to pay to the first party an additional bonus of fifteen thousand ($15 000) dollars, payable out of first oil run to the credit of the second party from oil produced from said lease; said additional bonus to be payable when and as oil is produced to the credit of second party; provided, however, that the second party shall be relieved, pro tanto, from this obligation when and if said lease ceases to produce oil in paying quantities. Second party agrees to fully protect the leasehold estate in so far as drilling requirements are concerned, limited to this extent, however, that the first well is to be drilled by the second party free of cost to first party, completed into the tanks, in event said first well produces oil in commercial quantities. Any and all wells drilled subsequent to the first well shall be paid for by the respective parties hereto in the proportion to their ownership in and to the leasehold premises.

"(3) If said first well which is to be drilled by second party free of cost to first party, should be nonproductive, then second party may salvage as their own property all the materials used in said well. If, however, such free well to first party produces oil or gas, or either of them, in paying quantities, then said first party shall become the owner of an undivided one-half interest in and to all the material and equipment necessary to produce said well.

"(4) Second party shall have charge of the development and operation of said lease, and first party shall be liable unto second party for all just and reasonable operating costs, and all development costs laid out in the drilling of all wells except the first well, which is to be drilled by second party free of cost to first party. * * *

"(6) First party agrees to pay unto second party a reasonable overhead charge in connection with the development and operation of said premises. The additional bonus of $15,000, herein provided for to be paid by second party unto the first party shall be paid only out of oil, and if the lease does not produce sufficient oil to the credit of second party to fully pay the $15,000 bonus to first party, then such obligation shall be extinguished, and it is further agreed between the parties hereto that it is the sense and spirit of this contract that the second party shall not be compelled or obligated under the terms hereof to operate and develop the property for the sole purpose of paying the bonus into the first party when such property cannot reasonably be construed as producing oil in paying quantities. * * *

"(8) When it becomes necessary in order to protect the lease, or justifiable to start drilling operations upon said leasehold premises, and said second party locates its Number One well, which is hereby designated as the well to be drilled free of cost to the first party said second party shall drill said well to a sufficient depth to test the Wilcox sand found in the locality of this lease at approximately 4,000 feet unless such free well to first party produces oil in paying quantities at a lesser depth.

"All of the terms, conditions, stipulations and covenants and agreements herein contained shall extend to and be binding upon the respective parties hereto, their heirs, personal representatives, successors and assigns.

"In witness whereof, the parties hereto have caused this agreement to be executed in duplicate on the day and year first above written.

"Omar Oil & Gas Company,
"By N. F. Clark, President,
"(First Party).

"Attest John B. Fritz, Secretary. (Seal)
"Cosden Oil & Gas Company,
"By J. C. Denton, Vice-President.
"Attest: A. D. Kneale, Asst. Secretary.
(Seal.)"

The execution of the above contract was duly acknowledged by N. F. Clark, president of Omar Oil & Gas Company.

The oil and gas mining lease referred to in the above contract was a Producers Form 88, Special No. 0, Republican Press, Tecumseh, being made and entered into on the 18th day of September, 1923, by and between Charles W. Williams and wife, Ella J. Williams, lessor, and O. F. Cashdollar, lessee, covering the land described in the contract, supra, for a period of ten years and con-

tains the usual covenants, the only portions of which may have a bearing on this case, being as follows:

"If no well be commenced on said land on or before the 18th day of September, 1924, this lease shall terminate as to both parties, unless the lessee shall on or before that date pay or tender to the lessor or to the lessor's credit in the Tecumseh National Bank at Tecumseh, Okla., or its successors, * * * the sum of seventy-eight and 50/100 dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and from like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. * * *

"Should the first well drilled on the above-described land be a dry hole, then, and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals, in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon resumption of the payment of rentals, as above provided, that the last preceding paragraph hereof governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments. * * *

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns. * * *"

The plaintiff in its petition alleges the incorporation of both the plaintiff and defendant under the laws of Delaware and their license to do business in the state of Oklahoma, and for its first cause of action alleges that the Phoenix Oil Company was formerly named Omar Oil & Gas Company, and that Mid-Continent Petroleum Corporation, the defendant, is the successor of Cosden Oil & Gas Company; that the plaintiff, on and before August 20, 1926, was the owner of a good, valid and subsisting oil and gas mining lease on the land described in the contract, supra, by assignment from O. F. Cashdollar; that the plaintiff being desirous of having a well drilled on said lands for oil and gas, in order that the oil and gas rights under said lease might become vested with the primary term of said lease, entered into a contract, as above set out, with Cosden Oil & Gas Company, by which

it alleges Cosden Oil & Gas Company agreed to drill a well on said lands while same were under lease, and further agreed to pay plaintiff $15,000 out of oil to be produced therefrom by Cosden Oil & Gas Company from its interests, in addition to the cash consideration of $15,000 paid at the time of making the contract in exchange for the assignment by plaintiff of a half interest in said lease to Cosden Oil & Gas Company; that said contract was entered into by the parties with the purpose and intent that the lands covered by said lease, and the Cosden Oil & Gas Company, by said contract, and as a part of the consideration to be paid by it for the transfer of a half interest by plaintiff to it, agreed fully to protect said lease and agreed to drill one well thereon free of cost to the plaintiff; that the plaintiff made, executed and delivered to Cosden Oil & Gas Company an assignment of a half interest in said lease under the terms and conditions and for the purposes above set forth, and as set forth in said oil and gas mining lease, and that said assignment was accepted by Cosden Oil & Gas Company under and by virtue of said contract hereinabove set forth; that about March 15, 1932, the defendant, with full knowledge of the purposes for which said contract and said assignment were made, took over the one-half interest in the lease conveyed by the plaintiff to Cosden Oil & Gas Company, and became the successor in interest of said Cosden Oil & Gas Company in and to said lease, succeeding to all its rights, and being charged with all of its obligations and liabilities; that the defendant failed to protect said lease, and refused to drill a well thereon although requested to do so by the plaintiff in writing about October 6, 1932, and June 10, 1933; that it has been damaged in the sum of $75,000 by such failure and refusal to drill said well as provided for by said contract.

The defendant demurred to the petition alleging: (1) That there was a defect of parties defendant; (2) that the petition failed to state facts sufficient to state a cause of action; and (3) that the causes of action attempted to be alleged in the petition are barred by the statute of limitations. The demurrer was sustained as to the second ground.

The plaintiff argues this case under three assignments of error which may be incorporated into and stated in one proposition, namely:

The facts set forth in the first cause of action, and in the second cause of action,

and in the petition as a whole, are sufficient to constitute a cause of action in each in favor of the plaintiff and against the defendant

—and discusses them under two headings, namely:

(a) The contract must be judged in its entirety and its meaning derived from the entire context of the instrument; and

(b) The allegations of the petition stated a cause of action in favor of the plaintiff and against the defendant.

In support of the first heading the plaintiff quotes section 9465, O. S. 1931, as follows:

"The whole of a contract is to be taken together so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others"

—and quotes from numerous cases from this jurisdiction to the effect that the intention of the parties to a contract must be obtained from the whole instrument, as,

"In arriving at the intention of the parties to a contract, the whole instrument must be read together, and, if possible, every part thereof should be made effective, giving to the words and terms thereof their ordinary and generally accepted use and understanding." City of Tecumseh v. Burns, 30 Okla. 503, 120 P. 270; Brown v. Coppadge, 50 Okla. 88, 153 P. 817; Lamont Gas & Oil Co. v. Doop & Frater, 39 Okla. 427, 135 P. 392; K. C. Bridge Co. v. Lindsay Bridge Co., 32 Okla. 31, 121 P. 637; Ft. Dearborn Trust & Sav. Bank v. Skelly Oil Co., 146 Okla. 179, 293 P. 557.

There is no dispute between the plaintiff and defendant on the above statement of the law as to the interpretation of the contract. Both parties quote and rely upon the section of the statute quoted above. But as to the meaning of the contract under consideration when the above rule is applied, the parties are diametrically opposed, each claiming that the contract, so interpreted, is favorable to its contention.

A careful reading of the contract herein sued upon, and of the lease attached to the petition of the plaintiff, fails to reveal a positive statement to the effect that either the lessee under the lease or the assignee under the contract is obligated to drill a well upon the leased premises. If any such obligation rests upon the Cosden Oil & Gas Company, and upon the defendant as its successor, it must be implied from the terms used in the lease in the assignment of same, or in the contract accompanying the assignment. The plaintiff contends that the terms of the lease have nothing to do with this

case as the action is based upon a breach of the contract attached to the petition. It contends that the language of the contract expressly obligates the Cosden Oil & Gas Company, and the defendant as successor of the said company, to drill one well on the land described in the lease free of cost to the plaintiff, a sufficient depth to test the Wilcox sand, found in the locality of the lease at approximately 4,000 feet, unless such free well to plaintiff produces oil in paying quantities at a lesser depth, and relies upon the following expressions in the contract (Omar Oil & Gas Company, later known as Phoenix Oil Company, designated "first party" and Cosden Oil & Gas Company, as "second party"):

"Second party agrees to fully protect the leasehold estate in so far as drilling requirements are concerned, limited to this extent, however, that the first well is to be drilled by second party free of cost to first party, completed into the tanks, in event said first well produces oil in commercial quantities. Any and all wells drilled subsequent to the first well shall be paid for by the respective parties in the proportion to their ownership in and to the leasehold premises.

"If said first well which is to be drilled by second party free of cost to first party, should be nonproductive, then second party may salvage as their own property all the materials used in the well. If, however, such free well to first party produces oil or gas or either of them, in paying quantities, then said first party shall become the owner of an undivided one-half interest in and to all the material and equipment necessary to produce said well.

"And if the lease does not produce sufficient oil to the credit of second party to fully pay the $15,000 bonus to first party, then such obligation shall be extinguished.

"And said second party locates its Number One well which is hereby designated as the well to be drilled free of cost to first party."

The plaintiff further contends that, since the $15,000 bonus to the first party is to be paid only out of oil run from the leased premises, this obligates the second party to drill the well and develop the lease in order to create a fund to pay the bonus.

As observed above, neither the lease nor the contract accompanying the assignment contains any term or terms directly obligating the Cosden Oil & Gas Company, or the defendant as its successors in interest, to drill a well on the leased premises before the termination of the leasehold. We are not favored with the terms of the assignment itself and are unable to say whether

it contains any conditions, or covenants, binding on the assignee, concerning the drilling of the leased lands other than those contained in the lease and assumed by the lessee. The contract accompanying or providing for the assignment provides for numerous contingencies, and if it had been the intention of the parties to unconditionally bind the assignee to drill a well on the leased premises, they could easily have so stipulated; but they did not do so, and this court cannot supply material stipulations or read into the contract words it does not contain. Stipulations not actually made, and to which the parties might not have assented, cannot be imported into a contract.

Mr. Justice Swayne, speaking for the court in Ingle v. Jones, 2 Wall. 1, 17 L. Ed. 762, said:

"If the parties have made no provision for a dispensation, the rule of law gives none. It does not allow a contract fairly made to be annulled, and it does not permit to be interpolated what the parties themselves have not stipulated."

In Crancer v. Lareau (C. C. A.) 1 F. (2d) 117, the court said:

"The court, however, was powerless to make a new agreement. * * * No principle of law or equity will support a judgment or decree based on an agreement which the parties thereto did not make for themselves."

In C. H. Pope & Co. v. Bibb Mfg. Co. (C. C. A.) 290 F. 586, the court said:

"The fundamental nature of a contract must always be borne in mind. It is made by words and 'has strictly speaking nothing to do with the personal or individual intent of the parties'."

In Bijur Motor Lighting Co. v. Eclipse Machine Co. (C. C. A.) 243 F. 600, the court said:

"When persons, natural or artificial, use words in contract making falling short of or going beyond intention, they must abide by the result of their efforts."

The text writers are in agreement that where a contract is silent as to a particular matter, an agreement cannot be interpolated. 12 C. J., pages 524 and 525; 6 R. C. L. 997; 2 Williston on Contracts, section 610; 2 Elliott on Contracts, sections 1510, 1936.

Williston says in volume 2, section 610:

"It may be said without qualification that if the parties have made a memorial of their bargain, or a writing required by law, their actual intent unless expressed in some way in their writing is ineffectual except where it can be made the basis for reformation of the writing."

In Northern Irr. Co. v. Dodd (Tex. Civ. App.) 162 S. W. 946, the court said:

"The maxim that as a man binds himself so shall he be bound is a sound one, and courts should hesitate to change express contracts by implication. The appellee may or may not have been willing to contract to cultivate appellant's land without payment of damages; if appellant's failure to furnish water should be occasioned by drouth. All that we can say in this case is that he did not do so and we are not at liberty to make a contract for him which he did not make for himself."

Much stress is placed upon the expression contained in the second paragraph of the contract, wherein we find: "Second party agrees to fully protect the leasehold in so far as drilling requirements are concerned," the plaintiff contending that this expression obligates the defendant, as successor to Cosden Oil & Gas Company, to drill a well upon the leased premises before the expiration of the period, or before September 18, 1933.

With this contention we do not agree. It is our opinion that this expression in the contract does not enlarge upon the obligation to drill contained in the lease, and we must look to the expression used in the lease and to the construction placed thereon by the courts. Greenwood & Tyrrell v. Helm (Tex. Civ. App.) 264 S. W. 221; Simms Oil Co. v. Colquitt (Tex. Com. App.) 293 S. W. 491.

This court in the second paragraph of the syllabus to the case of Eastern Oil Co. v. Beatty, 71 Okla. 275, 177 P. 104, says:

"In an oil and gas lease for a term of 10 years, and as long thereafter as oil or gas is produced, providing royalties on the oil and gas to be paid the lessor, and imposing the alternative duty on the lessee of completing a well in 90 days, or paying a sum specified in advance each additional three months such completion is delayed, there is no implied covenant for diligent operation, or operation at all, during the term of 10 years, merely because such operations may be conducted successfully and profitably to the parties. The lessor is deemed to have assented to the postponement of operations through the several periods, and bound to accept the periodical payments therefor."

In the case of Brewster v. Lanyon Zinc Co. (C. C. A.) 140 F. 801, the court, speaking of the duty of the lessee, said:

"No obligation rests on him to carry the operations beyond the point where they will

be profitable to him, even if some benefit to the lessor will result from them."

Merrill on Covenants Implied in Oil and Gas Leases, page 62, says:

"To some courts, the stipulation for the payment of rental if a well is not drilled is an express agreement as to the measure of diligence which the lessee must exert in drilling the exploratory well. Adopting this construction, they hold that the lessor has agreed to receive the rental in lieu of drilling, and cannot, by refusing to do so, place upon the lessee the obligation which would arise in the absence of a contract upon the subject. This is the position which has been taken by the Supreme Courts of Kansas and Oklahoma, and by some of the Courts of Civil Appeals in Texas"

—and cites the following Oklahoma cases: Southwestern Oil Co. v. McDaniel, 71 Okla. 142, 175 P. 920; Eastern Oil Co. v. Beatty, 71 Okla. 275, 177 P. 104; Southwestern Oil Co. v. Kersey, 80 Okla. 135, 195 P. 120.

The contract under consideration not stipulating otherwise, we hold that the Cosden Oil & Gas Company was not obligated to develop the lease or to drill the first well in the absence of development adjacent to the lease in such manner as to drain the leased premises, and in the absence of an allegation in the petition that development on the leased premises would be profitable to the assignee. There is no allegation in the petition that such conditions existed. Kile v. Amerada Petroleum Corp., 118 Okla 176, 247 P. 681; Simms Oil Co. v. Colpuitt (Tex. Com. App.) 296 S. W. 491.

The contention of the plaintiff that the stipulation in the contract that the additional bonus of $15,000 to be paid to the first party is to be paid out of the first oil run to the credit of the second party from oil produced from said lease obligates the second party to develop the leased premises for the purpose of creating a fund from which to pay the bonus, is not sustained by the weight of authority. The cases cited by the plaintiff are not applicable to the facts in this case. The $15,000 bonus stipulated to be paid the first party was not the entire consideration paid for the half interest in the leased premises, but there was a very substantial cash payment made at the time of the execution of the assignment, besides the rental payments made by the second party from time to time in lieu of drilling.

The contention made by the plaintiff herein was made by the plaintiff in the case of Greenwood & Tyrrell v. Helm (Tex. Civ. App.) 264 S. W. 221. In this case Helm, who was the assignee of the original lessee in an oil and gas lease, assigned the lease to Greenwood & Tyrrell, in consideration of $16,000 in cash, which was paid, and $3,200 to be paid out of the first oil produced. Greenwood & Tyrrell did not drill any wells, and this action was begun in the lower court by Helm. The fourth and fifth paragraphs of the syllabus in this case are as follows:

"Where the assignment of an oil and gas lease for a cash payment provided for the payment of an additional sum to the assignor to be paid out of the first oil produced above the royalties reserved to the original lessor, the assignees were not required to drill in any event or pay the additional sum if oil was not produced in such quantity to yield that sum.

"Where the original lessee paid a valuable consideration not to be required unconditionally to drill, and his assignee sold the lease for a cash payment and for a further payment to be made out of the first oil produced above the royalties reserved to the original lessors, he sold the option not to be required to drill to the subassignees, who by accepting it assumed the identical obligations and benefits of the original lessee."

A similar case to the Helm Case is Simms Oil Company v. Colquitt (Tex. Com. App.) 296 S. W. 491, the syllabus of which reads as follows:

"Where oil and gas lease requiring lessees to drill within eight months or pay annual rent of 50 cents per acre was assigned under assignment requiring a cash payment and an additional payment out of the first oil produced and marketed, held, that both contracts must be construed together, and assignee had same rights as original lessees, and was not impliedly obligated to drill for oil, but had option to drill, pay annual rent, or forfeit lease."

The court in this opinion quotes with approval from the cases of Eastern Oil Company v. Beatty, supra; Smith v. Louisiana Oil Refining Corporation (C. C. A.) 12 F. (2d) 378; Greenwood & Tyrrell v. Helm, supra; Matthews v. Ramsey-Lloyd Oil Co., 121 Kan. 75, 245 P. 1064. From the latter case the court quotes the following:

"Just what was the nature of the contract between Matthews and the Ramsey-Lloyd Oil Company? Was it anything more than an ordinary transaction of bargain and sale, whereby the ownership of an oil and gas lease passed by assignment from assignor to assignee? The stipulated consideration was the substantial one of $12,000 in cash, together with the reserved condition that the assignor should receive a sum up to $30,-

000 out of whatever oil might be produced on the leased premises. There was no specific promise on the part of the Ramsey-Lloyd Oil Company that it was to drill for oil on the premises, and the circumstances of the sale and assignment were not fairly susceptible of an interpretation that plaintiff's assignee made any implied covenant to drill for oil. The rights and duties of the holder of the lease were specifically defined by the lease itself. Preston, the original lessee, was not required to drill. He could avoid that expense and yet keep the lease alive by paying $1 per acre per annum. When plaintiff by assignment acquired Preston's interest in the lease, his rights and duties were the same as those of Preston. Plaintiff was not required to drill; he could keep the lease alive by paying $80 per annum. And this court can perceive no added or different obligation to prospect and develop for oil devolving upon the Ramsey-Lloyd Oil Company as owner of the lease than that which attached to its ownership when it belonged to Preston or when it belonged to plaintiff. There is a seeming lack of logic or of good conscience in the attitude of plaintiff. In effect, he says to his vendee: 'I sold you an oil lease which by its terms gave you the option to defer development on payment of $1 an acre per annum, but by your bargain with me in which you paid me $12,000 in cash and promised to give me $30,000 worth of oil out of the first production from that lease, the stipulation in the lease itself which permitted you as my successor in title to defer development didn't mean anything. That was a highly advantageous clause in the lease when I owned it, but it became a delusion and a snare when you acquired it.'"

This court in the syllabus to the case of Kile v. Amerada Petroleum Corporation, 118 Okla. 176, 247 P. 681, said:

"In a contract of assignment of an oil and gas lease, which reserves to the assignor out of the working interest assigned a certain fractional part of the oil and other minerals produced, but does not in express terms bind and obligate the assignee to, at any time, drill for or produce oil upon the premises covered by the lease assigned, an implied covenant on the part of the assignee to protect the lines from drainage by drilling offset wells does not arise in favor of the assignor so as to make the assignee liable in damages for a failure to drill the offset wells."

In this case the lessee of an oil and gas lease assigned the lease under a contract, which reserved to the assignor one-eighth of all the oil, gas and casing-head gasoline produced from the leased premises, to be at all times free and clear of any and all expenses to the assignor. Subsequently, certain oil wells were drilled offsetting the premises covered by the lease, but the assignee failed to offset these wells, or any of them, by wells on the leased premises. Thereupon the assignor sued to recover damages in the sum of $15,821, being the alleged amount of oil drained from the premises involved. The court, in the course of the opinion, after stating that the assignee would be bound to drill the offset wells and protect the leased premises from drainage if it had obligated itself to drill and prospect for oil and gas in the contract of assignment, said:

"But an examination of the contract of assignment in the instant case fails to disclose that the defendant expressly covenanted to drill or prospect for oil and gas upon the premises covered by the lease assigned to it. It is contended, however, that this obligation must be implied from the obligation expressly made in the assignment to pay or deliver one-eighth of the oil and gas and casing-head gas produced. However, we do not understand, even in an oil and gas lease, that the covenant or obligation of the lessee to drill or develop the premises for oil and gas can be implied where there is no express covenant or obligation contained in the lease itself.

"The implied obligation is to diligently develop where there is some express obligation to drill assumed by the lessee, and, in such case, to protect the lines from drainage by offset wells. Since royalties to be derived from exploration and development constitute the real consideration in an oil and gas lease, a lease not obligating the lessee in express terms to drill at all would be without consideration and void, and the lessor would not be bound thereby. There must be some express covenant entered into upon which to base the implied obligation, and if the court should undertake to supply the primary framework of the agreement which the parties themselves have omitted, it would constitute an invasion of the domain of private contract reserved to individuals under the law."

We conclude, from a careful examination of the entire record, that the trial court committed no error in sustaining the demurrer to the petition.

The judgment of the trial court is therefore affirmed.

The Supreme Court acknowledges the aid of Attorneys John F. Butler and James C. Cheek in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the

analysis of the law and facts was prepared by Mr. Butler and approved by Mr. Cheek, this cause was assigned to a Justice of this court for examination and report to the court. Thereafter, oral argument was heard by the court, and, upon consideration by the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, CORN, and GIBSON, JJ., concur. RILEY, BAYLESS, WELCH, and PHELPS, JJ., absent.