HERCULES CASUALTY INSURANCE COMPANY, Appellant,

v.

PREFERRED RISK INSURANCE COMPANY, Sue Walters, Wein T. Lee, and Larry Jackson Cooper, Appellees.

No. 7520.

United States Court of Appeals Tenth Circuit.

Oct. 13, 1964.

1

**2**

Alfred B. Knight, Tulsa, Okl., for appellant.

Hudson, Hudson, Wheaton, Kyle & Brett and W. F. Kyle, Tulsa, Okl., for appellee Preferred Risk Ins. Co.

Before PHILLIPS and BREITENSTEIN, Circuit Judges, and CHRISTENSEN, District Judge.

CHRISTENSEN, District Judge.

This action, based upon diversity jurisdiction, was brought by Preferred Risk Insurance Company against Hercules Casualty Insurance Company, Sue Walters, Wein T. Lee and Larry Jackson Cooper, for a declaratory judgment. A policy of liability insurance had been issued by Preferred Risk to Larry Jackson Cooper, covering a 1962 Chevrolet pickup truck. Another policy had been issued by Hercules to Robert Jackson Cooper, father of Preferred Risk's insured, covering a 1957 GMC pickup truck. While the son was driving his father's truck on September 8, 1962, it collided with an automobile being driven by one Bartlett, with whom appellee Lee was riding. The latter was injured, as was appellee Walters, who was riding with the son.[1] The trial court sustained coverage under the Hercules policy but not under Preferred Risk's, and entered judgment accordingly. This appeal by Hercules involves the construction of the coverage provisions of the respective policies in view of the temporary exchange between father and son of the use of their trucks under the circumstances now to be noted.

A few days before the collision in question the father, Robert Jackson Cooper, decided to take a trip to visit another son in a distant city and, believing that the newer pickup truck belonging to his son, Larry, would be more suitable, suggested an exchange of trucks for the purposes of the trip. What the son would do with the father's pickup

truck was not discussed, and there was no condition, instruction or limitation concerning its use by the son. The father utilized the son's truck for the purposes indicated. The son used the father's truck for his own purposes, as he would have done had he been driving his own; and he was so using his father's truck at the time of the collision. Actually he did nothing for his father during the period the vehicles were exchanged, although there is testimony from the father, apparently without reference to the exchange, that he had asked his son to "check on the family for groceries on Saturday to see if they needed any groceries". The facts are not substantially controverted or questioned among the parties.

The pertinent provisions of the Preferred Risk policy (issued to the son as named insured) are:

"Preferred Risk Insurance Company * * * Agrees * * *

"PART I—LIABILITY

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages. * * *

"Arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile. * * *

"Definitions under Part I:

" 'non-owned automobile' means an automobile or trailer not owned by the named insured or any relative. * * *

" 'private passenger automobile' means a private passenger, station wagon or jeep type automobile;

" 'Utility automobile' means an automobile with a load capacity of fifteen hundred pounds or less of the pickup body, sedan delivery or panel truck type. * * *

"Persons insured. * * *

---

1. Bartlett's personal representative was not joined. The individual appellees have submitted this appeal on the briefs of the insurance companies, notwithstanding the granting of leave for them to present additional briefs following the oral argument in which their counsel did not participate.

"The following are insureds under Part I:

"(a) With respect to the owned automobile

"(1) The named insured and any resident of the same household.

"(b) With respect to a non-owned automobile,

"(1) the named insured, and any relative, but only with respect to a private passenger automobile or trailer not regularly furnished for the use of the named insured or such relative; * * *.

"Exclusions. * * *

"(f) to a non-owned automobile while used (1) in the automobile business by the insured or (2) in any other business or occupation of the insured except a private passenger automobile operated or occupied by the named insured or by his private chauffeur or domestic servant, or a trailer used therewith. * * *"

The pertinent provisions of the Hercules policy (issued to the father as named insured) are:

"Persons Insured. The following are insureds under the Liability * * * Coverages.

"(a) with respect to an owned automobile. * * *

"(2) any relative using such automobile to whom the named insured has given direct and express permission for its use, provided the use is within the scope of such permission.

"(3) any person while using such automobile for and on behalf of the named insured at the direct and express request of the named insured. * * *

"Definitions:

" 'relative' means a relative of the named insured who is a resident of the same household, provided neither he nor his spouse owns a private passenger automobile."

The trial court was clearly right in concluding that the son's Preferred Risk policy did not cover the father's vehicle at the time of the collision. The father's truck while used by the son was under the son's Preferred Risk policy a "non-owned vehicle other than a private passenger automobile", to-wit, "a utility automobile * * * with a load capacity of fifteen hundred pounds or less of the pick-up body, sedan delivery or panel truck type". As such, its use was expressly excluded from the Preferred Risk coverage. There is no leeway in the language of the policy to permit the construction urged by appellant that since the son's policy covered an owned pickup truck it should be held to apply also to a non-owned vehicle of the same character. The Preferred Risk policy expressly stipulated to the contrary.

The cases cited by appellant, such as Fidelity & Casualty Co. of New York v. Martin, 9th Cir., 66 F.2d 438 (1938), indicating that the term "private passenger automobile" may be construed to include a truck, are not apposite because in those cases the interpretation was not precluded by the terms of the policy. The line of cases in point here is illustrated by Johnston v. Maryland Casualty Co., 22 Wash.2d 305, 155 P.2d 806 (1945). Where the language of an insurance contract is unambiguous there is no room for construction. Order of United Commercial Travelers of America v. Edwards, 10th Cir., 51 F.2d 187 (1931). Stipulations not actually made, and to which the parties might not have assented, cannot be imported into the contract, and the law does not permit to be interpolated what the parties themselves have not stipulated. Phoenix Oil Co. v. Mid-Continent Petroleum Corporation, 177 Okl. 530, 60 P.2d 1054, 111 A.L.R. 504 (1936); see also Aetna Ins. Co. of Hartford, Conn. v. Jeremiah, 10th Cir., 187 F.2d 95 (1951); Fidelity and Casualty Company of New York v. Reece, 10th Cir., 223 F.2d 114 (1955); United States Fidelity & Guaranty Co. v. Briscoe, 205 Okl. 618, 239 P.2d 754 (1951).

On similar principle, we cannot escape the conviction that there was no coverage

**4**

of Larry Jackson Cooper, the son, under his father's Hercules policy.

■ It is undisputed that Larry Jackson Cooper was married, resided in his own household, and was not a member of his father's household at the time of the collision. Hence he was not a "relative" as defined in the Hercules policy, and mere permission and use within the scope of the permission were not sufficient upon which to predicate coverage. To be insured the son would have to have been in respect of the truck owned by the father, the insured named in the policy, a "person using such automobile for and on behalf of the named insured at the direct and express request of the named insured".

In no sense was the son using his father's truck "for and on behalf" of his father at the time of the collision. He possibly could be said to have been using it at his father's "express and direct request"; at least a plausible argument can be made for the latter application. But the two required conditions are stated conjunctively in the policy.

The policy stipulated neither in form nor substance that coverage was extended to any person using for his own purposes the described vehicle in exchange for another vehicle to be used by the named insured. It may be said that exchange of trucks was for the benefit of the father, but the use of the father's truck by the son at the time of the collision was not; and certainly the son was not involved in the collision "while using the described automobile for and on behalf of the named insured. * * *"

■ Insurance policies, of course, should be interpreted favorably to the insured where equivocal or ambiguous language permits a selective judgment. Feenely & Meyers v. Empire State Insurance Co., 10th Cir., 228 F.2d 770 (1955); Great Northern Life Ins. Co. v. Cole, 207 Okl. 171, 248 P.2d 608 (1952). But the court cannot resolve ambiguity if none exists and, as heretofore noted in connection with the other phase of the case, an insurance policy may not be reconstructed to import meanings contrary to the obvious intention of the parties.

We believe that the unambiguous language of the father's policy precludes coverage of the son as to the collision, the latter under the circumstances not coming within the definition of an "insured". But if there were any ambiguity in this respect and resort could be had to extrinsic aids to construction,[2] the record only further demonstrates that the form of policy, in consideration of a reduced premium, was written with the idea of precluding coverage under circumstances such as are presented here.[3]

2. The trial court apparently treated the policy as unambiguous since it made no finding as to the intent of the parties, resting its decision on a statement of the pertinent terms of the policy and the conclusion of law that "(t)he Hercules Casualty Insurance Company policy did cover the 1957 GMC pick-up truck and that company has the sole duty to defend any actions or to pay any judgments arising out of the use of said truck * * *."

3. Subject to the objections of materiality and relevancy it was stipulated that certain affidavits could be, and they were, received as the testimony of the affiants. One of them was by the president of the insurance company who stated:
"That on May 20, 1960 Hercules Casualty Insurance Company filed with the State Insurance Board a Special Combination Automobile Policy form to be written at a deviated rate from the National Bureau rates for the reason that it was the intention of the company in writing this policy to eliminate superfluous coverages for individuals who are foreign to the named insured's household and economic responsibility. In designing this Special Combination Automobile Policy, original discussions were to provide coverage only for a family unit, that is a family living in one household, and eliminate coverage for all other persons. Following this original Underwriting intention it was decided that coverage should be provided in those instances where someone outside of the family unit was driving the insured automobile on some specific mission for the named insured, at the express request of the named insured. The reason for extend-

As to the non-liability of Preferred Risk Insurance Company the judgment of the lower court is affirmed; as to the liability of Hercules Casualty Insurance Company, it is reversed.

ing coverage to these people outside of the insured's household was that in these instances the named insured himself could possibly be held legally liable and we desired to protect him in these instances. Therefore, under 'Persons Insured' the additional definition of subparagraph 3 under 'A' was added. This reads: 'Any person while using such automobile for and on behalf of the named insured at the direct and express request of the named insured.'" There is nothing in the record to indicate a different intent or understanding on the part of the insured.