## PATSY OIL & GAS CO. v. BAKER.

No. 17214. Opinion Filed June 7, 1927.

Rehearing Denied Oct. 11, 1927.

(Syllabus.)

1. **Appeal and Error—Review—Questions of Fact—Cancellation of Contract.**

In an action by a party to cancel a contract, the findings of the court thereon will not be disturbed by this court on review unless such findings are clearly against the weight of the evidence.

2. **Oil and Gas—Election of Remedies—Action by Assignor of Lease Against Assignee for Damages for Breach of Contract not Bar to Action to Cancel Contract.**

Where a contract is made between the assignor and assignee of an oil and gas lease, and such contract imposes an obligation

upon the assignee to drill and develop the premises for oil and gas, the rights and obligations of the parties would be the same as that of lessor and lessee in an ordinary oil and gas lease, and an action by the assignor of such lease to recover stipulated damages contained in said contract of assignment is not such an election of remedies by the assignor as will preclude him from maintaining an action for the cancellation of said contract, thereby removing a cloud from his title.

### 3. Oil and Gas—Forfeiture of Lease for Lack of Diligence in Development.

"Neither party to the contract is the arbiter as to whether or not due diligence has been exercised to operate an oil and gas lease. If an oil and gas lease is not operated with due diligence under the facts and circumstances of the case, then a court, upon proper showing, may declare the lease forfeited." Strange et al. v. Hicks et al., 78 Okla. 1, 188 Pac. 347.

Error from District Court, Stephens County; Will Linn, Judge.

Action by C. P. Baker against the Patsy Oil & Gas Company. Judgment for plaintiff, and defendant appeals. Affirmed.

George Trice, Denver N. Davidson, George N. Otey, and J. G. Ralls, for plaintiff in error.

Womack, Brown & Cund, M. E. Jordan, and Lydick & McPherren, for defendant in error.

LESTER, J. The parties in this court appear in the inverse order to that in the district court. For convenience they will be referred to as they appeared in the court below.

On the 3rd day of October, 1918, the plaintiff and defendant entered into a written contract, which contract provided that for and in consideration of an assignment of a certain oil and gas lease by the plaintiff to the defendant the defendant would drill a certain oil well on said lease.

Said contract provides in part as follows:

"That said Patsy Oil & Gas Company shall within six months from the date hereof, drill upon said land above described a well to a depth of 2,500 feet unless oil or gas is found in paying quantities at a less depth.

"It is specifically agreed that said well shall be drilled at some point upon the line of said land above described in such a position as to offset the southwest quarter of section 12, township 2 south, range 8 west. * * *

"It is further specifically agreed that the party of the second part shall deposit in the Exchange National Bank of Ardmore a certified check in the sum of $1,000 which sum the parties hereto estimate as the damages suffered by the party of the first part in case of a failure on the part of the party of the second part to complete this contract according to the terms hereof, the parties hereto finding from the nature of the case that it would and will be impracticable and extremely difficult to fix or determine the actual damages suffered by the party of the first part in case said well is not completed."

The plaintiff alleged in his petition that the defendant had wholly failed to carry out the agreement as contained in said contract; that it had failed to drill a well on the location named in said contract; that it had failed to complete a well to the depth of 2,500 feet; that it had drilled to a depth of about 1,400 feet; that no gas or oil had been found in said well and that the defendant finally abandoned its contract by removing its machinery from said lease.

Plaintiff in his petition asked for cancellation of said contract and judgment for damages in the sum of $1,000.

A jury was impaneled, and thereafterwards rendered its findings of fact on certain interrogatories submitted to them by the court, but these interrogatories and answers thereto returned by the jury into court were treated by all parties to the action as being only advisory to the court.

The parties to the action finally agreed that the jury be discharged and the court be permitted to render its judgment on all the issues submitted under the pleadings and the evidence introduced at the trial. The court thereafter rendered its decision in favor of the plaintiff on all controverted questions, and rendered its judgment in favor of the plaintiff in the sum of $1,000, and also decreed a cancellation of the contract between the plaintiff and the defendant, from which judgment the defendant appeals.

The defendant urges numerous errors of law occurring at the trial of said case. From a close examination of the record, as well as the briefs presented by the parties to this action, we think the principal question here involved is whether or not the defendant abandoned its lease and contract with the plaintiff. On this issue the court found:

"The court further finds that the said defendant, Patsy Oil & Gas Company, after it went on said premises and drilled a well to a depth of approximately 1,400 feet, then abandoned the premises described in the plaintiff's petition, and has not drilled on

the said premises since said date up to the time this cause was submitted to the court on the date aforesaid. The court further finds that the said defendant, Patsy Oil & Gas Company, did not drill said well within six months from the 3rd day of October, 1918, as it had agreed to do in said contract, and that more than six months elapsed before the filing of the petition, and said well had not been drilled."

The question here presented is whether the findings of the court are against the clear weight of evidence.

The contract for drilling was signed on October 3, 1918, and provided that said defendant should within six months from date of said contract drill upon said lease a well to the depth of 2,500 feet unless oil or gas was found in paying quantities at a less depth.

The records show that three principal witnesses testified in the cause: C. P. Baker and D. R. Jones. for the plaintiff, and H. W. Marcum, president of the Patsy Oil & Gas Company, for the defendant.

C. P. Baker in behalf of himself testified in part as follows (C.—M. 44, 45):

"Q. Do you know when they began drilling that well? A. They began drilling the well three days after six months in which it should have been completed. Q. Let's see, what time would six months have expired? Did you figure that up? A. It was made on October 3. They commenced I think, April 6. Q. When did they quit? A. They quit some time in May. I think. Q. In what year? A. 1919. Q. When they got to that 1,598, or 1.600, whatever it is, what did they do? A. They moved their machinery out, and a few days after that, the wind blew the derrick down, and it has been dormant since. Q. Now, let's see. They ceased operations on that lease from May, 1919, until April, 1920. Is that your testimony? A. Yes."

It appears from the evidence that the defendant was using a rotary drill in developing said well, and that representatives from the Department of the Interior objected to its further use and requested that the defendant cease operations in the use of said rotary drill, and that the defendant acquiesced in this demand, and thereupon stopped further drilling on said well, and thereafter removed its machinery from said lease, and thereafter the derrick was blown down and the material composing it was taken from said leased premises.

H. W. Marcum, as chief witness for the defendant, testified in part as follows (C.-M. 79-80):

"Q. Your rotary moved out and ceased drilling on the lease on the 20th day of May? A. Something in that neighborhood. Q. Approximately? A. I really could not say for sure what date it was. Q. This suit was filed in August. The record shows it was filed in August. Between May and August you did not go back on the lease to drill, did you, last year? A. May or August, no, sir. Q. That is what I say, in that interim, between the time you moved the rotary out and the suit was filed, you did not go back on the lease to finish the well? A. Sure not, they filed suit against me. Q. Why they did it, you don't know? A. No, I did not know. Q. Then the suit was filed in August, and it remained here on the docket since August until two weeks ago, and you never tried to do anything on the lease towards drilling the well? A. No, sir. Q. Now you say the Department officials asked you to discontinue drilling with the rotary. A. Yes, sir. Q. And you said all right. Now, you could have gone in there and finished that hole with standard tools? A. Yes. Q. And you do intend to do that now if you go back to drill? A. Yes. Q. And you, could have done that when you moved your rotary out? A. If I had the derrick and had the pipe."

In considering the contract in the instant case we must look to the obligations it created as between assignor and assignee and the relations that the assignor and assignee bore each other.

The contract provided in part:

"That the Patsy Oil & Gas Company shall within six months from the date hereof, drill upon said land above described a well to a depth of 2,500 feet unless oil or gas is found in paying quantities at a less depth.

"It is specifically agreed that said well shall be drilled at some point upon the line of said land above described in such a position as to offset the southwest quarter of section 12, township 2 south, range 8 west."

In the case of Kile v. Amerada Petroleum Corporation 118 Okla. 176, 247 Pac. 681, this court said:

"If, as between assignor and assignee, the contract of assignment imposed upon the assignee an obligation to drill or develop the premises for oil and gas, the rights and obligations of the parties would be the same as that of lessor and lessee in an ordinary oil and gas lease, and if the assignee, having obligated himself to drill and prospect for oil and gas, omitted to protect the lines from drainage by offset wells. he would undoubtedly be liable under implied covenants the same as a lessee under similar circumstances."

This court in the case of Strange et al. v.

Hicks et al., 78 Okla. 1, 188 Pac. 347, syllabus, parags. 4 and 5 thereof, said:

"4. If an oil and gas lease does not expressly provide for the operation of the lease, after discovery of either oil or gas or both, then there is an implied contract to exercise diligence, under the facts and circumstances of the case, to operate the same, thus making the lease remunerative to the parties to it.

"5. Neither party to the contract is the arbiter as to whether or not due diligence has been exercised to operate an oil and gas lease. If an oil and gas lease is not operated with due diligence under the facts and circumstances of the case, then a court, upon proper showing, may declare the lease forfeited."

In the case of Pelham Petroleum Co. v. North, 78 Okla. 39, 188 Pac. 1069, this court said:

"Preliminary to a consideration of the evidence we will advert to the law applicable to cases of this character, where it is sought to forfeit an oil and gas lease for failure of the lessee to exercise reasonable diligence in prosecuting the work of production and development after oil and gas have first been found within the time granted by the lease for prospecting the premises. It is now well settled that a court of equity will declare a forfeiture of an oil and gas lease because of the breach of an implied covenant to diligently operate and develop the property when such forfeiture will effectuate justice, but the granting of such relief depends upon the facts and circumstances surrounding the particular case. Indian Oil, Gas & Development Co. v. McCrory, 42 Okla. 136, 140 Pac. 610; Brewster v. Lanyon Zinc Co., 140 Fed. 801, 72 C. C. A. 213."

We find that the judgment of the court in canceling the lease of the defendant is not against the clear weight of the evidence, and, therefore, in conformity with the long-established rule of this court, such finding, on review, will not be disturbed.

The defendant also insists with much earnestness that the plaintiff, having asked for damages in the sum of $1,000 for breach of contract, could not, at the same time and in the same petition, insist on a cancellation of the contract and lease with the defendant.

The defendant urges that the plaintiff, on account of having alleged that he was damaged in the sum of $1,000 by reason of the breach of contract, had made an election of his remedies and was, therefore, barred from any equitable relief in having the contract canceled.

The plaintiff, on the other hand, maintains that he has cumulative rights, in that he is not only entitled to damages for failure of the defendant to perform its contract, but that he is also entitled to the equitable right and privilege of having the contract declared at an end, thereby removing the cloud from his title; that in order to enjoy the benefit and profits that will inure to him in being able to control the property for future development purposes, such property should be unhampered and unhindered by the contract and assignment made by the plaintiff to the defendant.

In the case of Huber v. Smith (Tex. Civ. App.) 228 S. W. 339, being a case similar to the one at bar, the court said:

"A suit by the lessors to cancel oil and gas leases and recover a deposit made by the lessee to guarantee performance by him was in the nature of the suit for specific performance so far as it sought judgment for the deposit as liquidated damages for the lessee's failure to drill within one year."

In our opinion there was no such election of remedies by the plaintiff in his suit against the defendant within the meaning of that term as generally understood. We think the plaintiff had a right under the contract to file his action for damages, and if the facts were such that justice would be the better effectuated between the parties, a court of equity would be empowered to remove any cloud upon the plaintiff's title by cancellation of the instrument executed by the plaintiff and defendant.

The defendant also complains that the judgment rendered by the court in favor of the plaintiff in the sum of $1,000 is a penalty imposed upon the defendant and, therefore, is not recoverable.

In the instant case we must look to the contract to determine whether the amount to be paid the plaintiff in case of default on part of the defendant was in the nature of a penalty or such an agreement for damages as contemplated by section 5069, C. O. S. 1921, which provides:

"A stipulation or condition in a contract, providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

Evidently each party to the contract in the instant case understood that in the event the defendant failed to carry out his contract the plaintiff would suffer damage, and

each party to the contract realized that it would be difficult to even approximately estimate the amount of such damages, and in order to escape this difficulty the parties to the contract fixed the sum of $1,000 as such damages, and this agreement is in full accord with section 5069, C. O. S. 1921.

Judgment is affirmed.

BRANSON, C. J., MASON, V. C. J., and HARRISON, PHELPS, HUNT, and RILEY, JJ., concur.

Note.—See under (1) 4 C. J. p. 887, §2857; 2 R. C. L. p. 203; 1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81; 6 R. C. L. Supp. p. 75. (2) 40 C. J. p. 1089, §§711, 712; p. 1090, §712 (Anno); anno 34 L. R. A. (N. S.) 309 9 R. C. L. p. 960; 2 R. C. L. Supp. p. 907. (3) 40 C. J. p. 1078, §696: pp. 1090, 1091, §713; anno. 11 L. R. A. (N. S.) 417; 34 L. R. A. (N. S.) 43; 12 R. C. L. p. 873; 4 R. C. L. Supp. p. 772.