E. L. COLBOURN, Plaintiff in Error,

v.

Edgar T. BELL and Oklahoma Television Corporation, a corporation, Defendants in Error.

No. 36867.

Supreme Court of Oklahoma.

Feb. 21, 1956.

McInnis, Cantrell, Tompson & Sullivan, Oklahoma City, for plaintiff in error.

Cargill & Cargill, Charles Hill Johns, Wayne W. Bayless, Oklahoma City, for defendant Edgar T. Bell.

Robinson, Shipp, Robertson & Barnes, Oklahoma City, for Oklahoma Television Corp.

DAVISON, Justice.

This is a suit brought by E. L. Colbourn, as plaintiff, against the defendants, Edgar T. Bell and Oklahoma Television Corporation, wherein said plaintiff seeks relief in the nature of specific performance of a joint venture contract and the establishment of a constructive trust. The parties will be referred to as they appeared in the trial court.

Defendants' separate demurrers to the evidence produced on the part of the plaintiff, were sustained and judgment was rendered for the defendants. Plaintiff has duly perfected this appeal therefrom. Three questions are presented for determination;

first, sufficiency of the evidence to establish plaintiff's alleged cause of action; second, propriety of the trial courts' rejection of certain proffered evidence; third, correctness of the trial court's order denying plaintiff a jury trial.

Plaintiff, as a witness, testified that, from 1930 to 1945, he was an employee of the Oklahoma Publishing Company on its display staff and, after 1937 on the commercial staff of its radio station, WKY. During the entire employment, he was well acquainted and closely associated with the defendant, Edgar T. Bell. Following that employment, he was connected with a radio station in San Antonio, Texas, as commercial manager. At that time, Bell, as manager of another radio station in that Texas City, offered employment to plaintiff as commercial manager of the same station, which said offer, plaintiff refused. In the latter part of 1949, Bell was in Oklahoma City, contemplating association with radio station KTOK and again started negotiations with plaintiff relative to the two of them going together into employment by the last above named station. Bell told him, "if you will join me, whatever the future opportunity affords, it will be for the two of us." Plaintiff replied, "on that basis, I will join you." They then shook hands.

A short time later, there followed a letter to plaintiff from Bell, referring to Mr. Ted Taylor, the owner of station KTOK, as follows:

"Just a note to advise you Mr. Taylor will be in Okla City not later than Wednesday. He was grounded by bad weather and called from New York.

"I have advised him about our conversation also that I would expect him to spend enough time in O.C. for us to reach a final answer. Lets be patient until I have another conference with Ted, at which time I will communicate with you and we can give a final answer—you can rest assured that to the best of my ability I will know we have a good opportunity."

Bell's contract provided for an option to purchase $50,000 worth of KTOK stock and, when plaintiff came to an agreement

with the broadcasting company, his contract, in part, provided:

"With reference to you sharing in the purchase of KTOK, inc. stock, it is agreed that Mr. Edgar T. Bell has agreed that you shall have an option on 10% of the $50,000.00 worth of KTOK, inc., stock at the end of a 12-month period. The price of this stock is hereby set at par. In the event Mr. Bell does not for any reason exercise his option on the $50,000.00 worth of stock and you wish to remain with the station under other local management and the station wishes to continue your employment, I hereby extend you that option."

Bell then wrote plaintiff, as follows:

"Ted called yesterday afternoon, to tell me you would be on the job, soon after Jan. 1st. I think you have made the right decision and personally, I am delighted. It now puts a little pressure on me. However, regardless what I do, you have a good contract, one which should in the long paces be most profitable to both you and the station.

"The folks in California called and wanted me to come out. I feel· we should look it over. If I turn it down, I will then have no regrets and can concentrate on K.T.O.K.

"I told Ted you were the one man, who could do the sales job in Oklahoma City. I also know the two of us would have lots of fun. We will be back in Oklahoma City Jan 2nd, Sat. I'll be seeing you—Have a nice Christmas. Our best to Mrs. Colbourn. The New Year may hold, a basket over flowing, with good things, for both of us."

Plaintiff began his duties with KTOK in January 1950. During that year, plaintiff's and Bell's interest as to future plans shifted from radio to television. Bell, therefore, discouraged the idea of exercising their option to buy radio stock. They then learned that Mr. Taylor was also interested in television and the securing of such a permit or license for television in connection with KTOK. Plaintiff and Bell then worked out cost estimates and promotional material along the line of television. In the spring of 1951, the two of them flew to California to talk to a Mr. Wrather about financing the construction and licensing of a T.V. Station. When asked by plaintiff what each was to get out of making the deal, Bell replied "We will insist on * * * $50,000.00 worth of non voting stock to be paid for out of earnings for each of us; I am to be manager at $25,000.00 per year; you are to be commercial manager at $15,000.00 per year." Wrather was interested in the idea but not in connection with a radio station. He agreed to put $500,000 into the project if the same amount could be raised locally. Upon returning to Oklahoma City and at the request of Bell, plaintiff prepared and turned over to Bell, a written memorandum of the understanding reached which was to be the evidence of the contract with Wrather. Plaintiff also suggested that Bell see a Mr. Dulaney about raising the balance of the capital needed.

Dulaney was sold on the idea and thought that, with the aid of some of his friends, there might be no need for Wrather's money. After meeting with Dulaney and his associates, Bell reported to plaintiff that,

"We are in the television business. These people * * * I had this meeting today and they are interested; they want us to put in writing this plan and they are going to have another meeting."

Subsequently, plaintiff and his wife prepared rough notes and drafts of the proposed plan which were delivered to Bell's secretary. Plaintiff introduced in evidence the prospectus or memorandum which Bell submitted to Dulaney and his associates and which was subsequently signed as the contract between them. He offered in evidence, the original rough notes and draft, above mentioned and also a comparative summary and comparison between those and the signed memorandum, which offered exhibits were rejected by the trial court as being merely self serving. It was on June 19, 1951 that the memorandum was purportedly presented and signed. Plaintiff fur-

ther. testified that, shortly before such presentation, certain changes were made therein but that plaintiff assured him "that this was still a fifty-fifty deal." Also that, after the presentation and signing, Bell returned and told plaintiff;

"Colbourn, we are in the television business. We had this meeting; they signed it, they signed our memoranda and it is in somebody's safe."

Plaintiff also testified that, during the time Bell was so busy with organizing the television group, he, plaintiff, did much of Bell's work around KTOK in order that Bell could be away.

The license for station KWTV was granted on July 22, 1953 to the defendant, Oklahoma Television Corporation, composed of Dulaney and his associates. Mr. Taylor testified as to the employment of Bell and plaintiff at KTOK and as to his interest in securing a television license for operation in conjunction with the radio station; that all of the negotiations up to Bell's return from California were at the suggestion, and direction and expense of Taylor. Some thirty days after Bell's return from California, Taylor knew he was not in the deal and was so advised by Bell.

On cross examination, plaintiff testified that he had no conversation or further association with Bell after December, 1951, and plaintiff continued on in his capacity as sales manager until September, 1953.

It is plaintiff's position that a fiduciary relationship existed between the plaintiff and the defendant Bell and that Bell took advantage of that relationship for his own personal gain. The foundation of that relationship, was in the petition, alleged to be that,

"This plaintiff and said defendant entered into an oral contract under which they agreed to and did become associated together as joint adventures [sic] or co-partners to work jointly and severally as 'a team' to look for, seek, initiate, originate, develop, put together and complete opportunities and transactions having for their objective the ownership and operation of radio, television, newspaper and communication projects and businesses whether as broker, promoter, owner or operator with the express agreement that anything earned or secured in the course of such operations would be taken, owned and held by the two said coad- ventures [sic] on an equal or fifty-fifty basis. Later between the two it was decided that they would concentrate and focus their joint and several efforts as aforesaid toward planning and securing an additional television station in Oklahoma City, Oklahoma. This objective was immediately embarked upon and the co-adventures [sic] jointly worked upon plans and sought financial backing which would permit readying and application for Channel 9, Oklahoma City. Such efforts were successful and above stated achievements followed from the aforesaid joint efforts."

■ The extent of proof necessary to establish such a cause of action has been outlined by this court on several occasions. In the case of Coryell v. Marrs, 180 Okl. 394, 70 P.2d 478, it was said,

"In an action for an accounting for the profits of a joint adventure, the burden is upon the plaintiff to prove by a preponderance of the evidence an agreement mutually obligatory by which several parties undertook the joint adventure."

■ Particularly applicable to the situation now before us is the following statement in the case of Sticelber v. Iglehart, 169 Okl. 453, 37 P.2d 638,

"Whether the action was one for an accounting in partnership, an accounting under a mining partnership, an accounting of a joint adventure, or to establish a trust, it was one in equity, and it was necessary for the plaintiff to prove an oral contract, the performance of the conditions necessary to be performed by him, and a breach by the defendant. Bernert v. Bernert, 123 Okl. 78, 254 P. 724."

Therein, the following rules were quoted from the earlier case of Central Mortgage

Co. v. Michigan State Life Ins. Co., 43 Okl. 33, 143 P. 175,

"Where parties in making an agreement fail to use language sufficiently definite to enable the court to ascertain to a reasonable certainty their intent, such agreement does not constitute an enforceable contract in law; nor will it support an action for damages, based upon a breach thereof.

"In this case the evidence shows that the agreement alleged to have been entered into between plaintiff and defendant was indefinite, vague, and uncertain to an extent that it fails to constitute an enforceable contract. Held, that, under section 924 Rev.Laws 1910, and likewise under the general law, such agreement is void, and the court did not commit error in directing a verdict for defendant."

In the case of Brewer v. Ewart, 210 Ala. 292, 97 So. 910, a situation was involved which, in many respects, was analogous to that in the instant case. It was there held that the alleged contract was entirely lacking in consideration or mutual obligation to perform on the part of the party seeking specific performance.

 And, as to the degree of proof necessary to establish a constructive trust this court has always adhered to the rule that,

"A constructive trust may be established by parol evidence, but the law, for the safety of titles, requires that the proof should be of the most satisfactory and trustworthy kind. The onus of establishing a constructive trust lies upon him who seeks its enforcement, and before a court of equity would be warranted in making a decree therefor, the evidence must be clear, unequivocal and decisive." Preston v. Ross, 205 Okl. 164, 236 P.2d 244, 245.

 With every inference favorable to plaintiff, the evidence in the case now before us is insufficient to meet the requirements of the above quoted rules. At most, it establishes the facts that Bell and plaintiff entered into separate employment contracts with the owner of radio station KTOK, at different salaries and in different capacities but because of each other; that, at the expense of their common employer and while so employed, they attempted to interest Wrather in financing a television station in connection with the radio station; that, that project failed; that they then attempted to unite an offer to finance on the part of Wrather with an offer to finance on the part of local investors; that that failed also; that Bell, then, secured an employment contract for himself with local investors solely, dependent upon securing a permit and constructing a television station.

The actions of the parties from that time on precludes any conclusion that the construction and operation of KWTV was a joint enterprise. Bell resigned his job with KTOK in October 1951 and devoted his entire time to the organization which culminated in the granting of the permit some year and a half later. Plaintiff continued on in his employment at KTOK over two years longer. After December 2, 1951, they had no contract with each other. Neither had, at that time or at any subsequent time, anything to sell or profit from except his separate individual talents and services. At all times until the trial of the instant case they were employees. No reported case has been called to our attention, nor have we found one upon independent investigation, where income of individuals in payment for their services as employees were sought to be adjudged as profits of a joint adventure. And, since our decision herein is based upon other grounds, we express no opinion upon whether or not it could be done. In any event, there was no contract between Bell and the plaintiff whereby either was bound to the other to do or to contribute anything. Nowhere, in the entire case, does plaintiff identify, as a part of the profits from the alleged joint adventure, the income he received from his employment during the year and a half or two years after Bell had resigned from KTOK and was devoting all of his time to the establishment of the television station from which he was to be later paid for those services, if and when it became a going concern. When thus brought into

focus, plaintiff seems to contend that Bell promised to make a gift to plaintiff of one half of what he, Bell, would be paid for personal services. "Such a promise is not binding and cannot be enforced in law or equity." Brewer v. Ewart, supra. A much different situation would have been presented, if Bell had procured a television permit and then either directly or indirectly sold it. The Oklahoma Television Corporation put up all the money, owned the station, was issued a permit. Bell was no more nor less than an employee and was paid under contract for his ability and services. The contract of employment which plaintiff testified he prepared was no part of the proceedings for obtaining either a permit or the financing for construction of the television station. It was a prospectus of reasons why the proposed company should be organized and should employ Bell as its manager and the terms of such employment.

 When plaintiff had completed his case and rested, the defendants separately demurred thereto. Because the evidence so introduced and all inferences to be drawn therefrom was insufficient to establish in plaintiff a right to recover, " 'it would be an idle thing to require the defendant to put on testimony to bolster up a case he had already won. When the plaintiff has exhausted his testimony and so announces by closing his case, it is not error for the court to weigh plaintiff's evidence and pronounce judgment for defendant where the testimony warrants.' " Connolly v. Gaffaney, 159 Okl. 60, 14 P.2d 391, 392.

The exclusion of plaintiff's manuscript and its comparison with the employment contract has no effect on the outcome of this case. The signed contract was admitted in evidence. Plaintiff testified that it was the product of his own work. In ruling on a demurrer to the evidence plaintiff's evidence is taken as admitted. The fact, of which the documents were offered as proof, must be assumed to be true. Therefore, their exclusion was in no wise prejudicial whether they were competent or not and we need not determine their admissibility. Any ruling thereon was harmless.

Plaintiff's final contention is that the court erred in denying him the right to jury trial. An analysis of the pleadings and evidence, hereinabove outlined, reveals that the only possible cause of action plaintiff could have had was for the establishment of a joint venture and the declaration of a trust. Such a suit is not one triable to a jury. In the case of Gorman v. Carlock, 72 Okl. 104, 179 P. 38, it was held that,

"An action to establish a partnership, declare a trust in an oil and gas lease, and for an accounting, is triable to the court."

For the reasons herein stated the judgment of the trial court should be and the same is hereby affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, BLACKBIRD, JACKSON and HUNT, JJ., concur.