Kenneth W. REES and Earl A. Rodkey,
Plaintiffs in Error,

v.

Powel BRISCOE, E. F. Briscoe, and Powel
Briscoe, Inc., a corporation, Defend-
ants in Error.

No. 37258.

Supreme Court of Oklahoma.

July 2, 1957.

Rehearing Denied Sept. 10, 1957.

Application for Leave to File Second Peti-
tion for Rehearing Denied Oct. 1, 1957.

Merle G. Smith, A. G. C. Bierer, Jr., Bierer & Moser, Guthrie, for plaintiffs in error.

Robinson, Shipp, Robertson & Barnes, Oklahoma City, for defendants in error.

Geo. N. Otey, T. G. Johnson, R. Rhys Evans, Ardmore, Embry, Crowe, Tolbert, Boxley & Johnson, C. Harold Thweatt, Oklahoma City, amici curiae.

HALLEY, Justice.

This is an action by Kenneth W. Rees and Earl Rodkey against Powel Briscoe, E. F. Briscoe and Powel Briscoe, Inc., to establish by constructive trust an overriding royalty interest in the working interest of defendants in a producing oil and gas lease. The parties will be referred to by name or as plaintiffs and defendants as they appeared in the trial court.

We shall set out a summary of the facts which appear to have a bearing upon the issues involved and tend to explain the relationship existing between the parties at the time the transactions here involved occurred.

In 1949 the plaintiff Rees owned oil and gas leases covering the East Half of the Northwest Quarter and the West Half of the Northeast Quarter of Section 28–15N–4W in Logan County, Oklahoma. The two eighty-acre tracts above described will be referred to as the Brouchoud tract and

were covered by the same leases. The East Half of the Northeast quarter will be referred to as the Perry tract, on which Rees owned three leases covering $^{79}\!/_{80}$ of this tract.

November 23, 1949, Rees assigned his leases covering the two Brouchoud eighty-acre tracts to Powel Briscoe, Inc., reserving ⅛th of ⅞th overriding royalty, to be effective after Powel Briscoe, Inc. had received the sum of $65,000 from production of his share, when Rees was to receive $^3\!/_{16}$ overriding interest, to be delivered free of cost to him at the mouth of the well.

On the same date the above assignment was made, Powel Briscoe, Inc. executed an agreement in writing whereby it was agreed that upon approval of title to the leases it would move on the property and commence drilling operations on or before January 1, 1950, and drill to the Bartlesville sand at approximately 6,500, unless production was found at a lesser depth. This well was completed as a producer in January, 1950.

The leases owned by Rees, covering $^{79}\!/_{80}$ of the minerals in the Perry tract, the East Half of the Northeast Quarter, were for a primary term of one year, or as long as there was production. On December 21, 1949, Rees assigned his leases covering $^{79}\!/_{80}$ of the Perry tract to Powel Briscoe, Inc., by an ordinary assignment, reserving an override of ⅛ of ⅞ working interest. The Brouchoud Well No. 1 was then being drilled. The only consideration for this assignment was the reserved override.

Rees testified that he transferred his leases on the Perry tract for no consideration except the reserved override because Briscoe had agreed to drill one well on each of the three eighty-acre tracts above described; that after the Brouchoud Well No. 1 was completed, he would drill on the other Brouchoud tract and then drill the third well on the Perry tract which adjoined the Brouchoud tract on the east. Briscoe denied that he made this agreement. The assignment of the leases on the

Perry tract made no mention that the reserved override would apply to any renewal or extension leases. The leases were for only one year and provided for no rental payments to extend the time for drilling. They expired in September, November and December, 1950.

Rees further testified that soon after the completion of the Brouchoud No. 1, defendants announced that they had to drill a well in Caddo County, but would then return and finish another well on the Brouchoud tract and one on the Perry tract. They drilled no further wells in that area in 1950.

However, about a month prior to the expiration of the Perry leases Briscoe obtained at his own expense, renewals of two of the leases on this land and by 1953 secured leases covering all of the minerals in the Perry land. The new leases made no mention of the Rees overriding royalty. Rees heard that new leases were being obtained by Briscoe but said he relied upon defendants to preserve and recognize his override.

On May 19, 1953, plaintiffs requested defendants give them a recordable instrument recognizing their overriding interest in the Perry tract. This was refused and plaintiffs commenced this action which resulted in a judgment for defendants and plaintiffs have appealed.

Almost immediately after the above demand by plaintiffs the defendants executed and filed for record releases of the three leases on the Perry tract assigned to Briscoe. The leases so released, and assigned by Rees to Briscoe each reserved to Rees a ⅛ of ⅞ overriding royalty. The leases so assigned had expired but Briscoe had secured new or extension leases and had obtained commercial production on the Perry tract, but had made no recognition of the Rees override.

Plaintiffs allege that since two of the leases assigned by Rees to Briscoe had not expired when Briscoe secured new leases, these new leases should be considered as extensions of the leases assigned, resulting

in the creation of an equitable trust in favor of plaintiffs to the extent of their interest.

The evidence clearly discloses that defendants have fully recognized and followed the terms of the assignment by plaintiffs of the Brouchoud leases whereby plaintiffs reserved an overriding royalty of $\frac{1}{8}$ of $\frac{7}{8}$ until defendants had received from their interest the sum of $65,000, when the override was increased to $\frac{3}{16}$ of $\frac{7}{8}$. This fact is only important in that it doubtless had some bearing upon the confidence reposed by plaintiffs in the defendants. It naturally caused plaintiffs to believe that the override on the Perry tract would be recognized and scrupulously followed by defendants.

Since the defendants appear to have carried out their agreement to drill the Brouchoud well No. 1, completing it in January, 1950, the plaintiffs naturally reposed confidence in them and relied upon their asserted oral agreement to drill three wells, two on the Brouchoud tract and one on the Perry tract unless dry holes were encountered. Rees testified he had confidence in Briscoe and assumed and believed that when he heard that Briscoe was securing new leases, he felt certain and assumed that his override was and would be protected.

We find it difficult to believe that Rees did not have full confidence in Briscoe when he transferred the leases on the Perry tract for no monetary consideration, but in reliance upon Briscoe to develop the Perry tract. The long delay from 1950, when the Perry leases expired, to 1953, when Rees demanded that his interest be recognized, indicates that Rees believed that Briscoe would protect his interest. Judging by the time required to complete the Brouchoud No. 1, the second well on that tract and a well on the Perry tract could have been at least commenced before the expiration of the assigned leases.

The lessor, Knightlinger, who owned $^{60}\!/\!_{80}$ of the minerals in the Perry tract, offered a new lease to Rees, when Briscoe's agent approached her for a new lease, but Rees declined and permitted Briscoe to acquire a new lease. A producer had been drilled on the Perry tract before Rees knew that his override would not be recognized and protected by Briscoe.

It is not disputed that the assignments of the leases on the Perry tract contained no express agreement to drill and neither was there any agreement in writing as to the drilling of a well as there was in respect to the Brouchoud leases. It is not shown why Rees did not request or require a written agreement as to the Perry tract leases. This fact is but another proof of the confidence of Rees in Briscoe. The assignment by Rees of the Perry leases contains the following reservation to-wit:

" * * * reserving, however, unto Kenneth W. Rees a $\frac{1}{8}$th of $\frac{7}{8}$th of all oil and gas that may be produced under the above described land during the term of said leases, same to be delivered at the mouth of the well, free of cost to the assignor."

It is evident that it would have been easy to have added a few words to the effect that the reservation should apply to renewals or extensions of the leases assigned. That would have protected the assignor from what happened when Briscoe secured new leases and refused to recognize the interest of Rees who gave up his leases for no consideration whatever when Briscoe failed to develop but secured new leases. He only released the leases assigned to him by Rees after Rees demanded that his interest be recognized. No business man would donate his leases to another under such circumstances unless he had confidence in his assignee.

Plaintiffs rely principally upon two former decisions of this Court. They are Probst v. Hughes, 143 Okl. 11, 286 P. 875, 69 A.L.R. 929 and Hivick v. Urschel, 171 Okl. 17, 40 P.2d 1077.

In the Probst case the assignment expressly provided that the overriding interest reserved by the assignor should extend to all "modifications, renewals or ex-

tensions" of the lease that assignee might secure. However, the Court held that the assignee owed a duty to the assignor to protect his interest, and said in part as follows:

"In these circumstances, therefore, we think, as is contended by plaintiff, that the case is brought within the oft-repeated rule found in many cases and standard legal treatises which is admirably expressed in Trice v. Comstock, 8 Cir., 121 F. 620, 57 C.C.A. 646, 61 L.R.A. 176, to wit:

" 'Wherever one person is placed in such a relation to another by the act or consent of that other, or by the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is in such a fiduciary relation with him that he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated.' " [143 Okl. 11, 286 P. 877.]

The Court also quoted from Clements v. Cates, 49 Ark. 242, 4 S.W. 776, 777, where it is said:

"The law forbids a trustee, and all other persons occupying a fiduciary or quasi fiduciary position, from taking any personal advantage touching the thing or subject as to which such fiduciary position exists; or, as expressed by another: 'Wherever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated.' If such a person acquires an interest in property as to which such a relation exists, he holds it as a trustee for the benefit of those in whose interest he

was prohibited from purchasing, to the extent of the prohibition."

In the later case of Hivick v. Urschel, supra, the oil and gas lease involved was owned by Hivick and was assigned by him to T. B. Slick for a consideration of $49,-800, $5,000, of which was paid in cash and $44,800 was to be paid from one-half of the oil produced. The assignee agreed to commence a well within sixty days. If the first well was a dry hole, assignee agreed to pay the rentals and protect the lease at his option, but paying assignor one-half of the oil produced from any well until the balance on the purchase price was paid.

The contract also provided that the assignee might release the lease, but before doing so he was to give assignor thirty days notice in writing of such intention, whereupon within thirty days assignor could request that the lease be reassigned to him. The notice provided for was not given. Slick failed to file his release within ninety days prior to the expiration of the lease as required by the rules of the Indian Agency, but the lease expired by its own terms July 29, 1926. On July 30, 1926, Slick secured a new lease from the land owner, and assigned an interest therein to Prairie Oil and Gas Company, which obtained production. Slick died and the plaintiff's claim was denied, and this action was filed on the rejected claim. The Court held that plaintiff was entitled to recover the amount agreed to be paid him from production.

The doctrine of constructive trusts was invoked and the Court quoted extensively from 3 Pomeroy's Equity Jurisprudence (4th Ed.) p. 2392, § 1050, in part as follows:

"* * * The doctrine is not confined to partners; it extends in all its breadth and with all its effects to trustees, guardians, and all other persons clothed with a fiduciary character, who are in possession of premises as tenants on behalf of their beneficiaries, or who are in possession as tenants of premises in which their bene-

ficiaries are interested. As this rule results from the relation of trust and confidence existing between the partners or other persons interested, it might be regarded as an outgrowth of the doctrine formulated in the preceding paragraph. It is more directly, however, a particular application of a broad principle of equity, extending to all actual and quasi trustees, that a trustee, or person clothed with a fiduciary character, shall not be permitted to use his position or functions so as to obtain for himself any advantage or profit inconsistent with his supreme duty to his beneficiary."

The Court held that under the circumstances and facts the plaintiff was entitled to recover the balance due him from production under the new lease obtained by Slick after the expiration of the original lease upon the theory that the parties stood in a fiduciary relationship which would make it unfair and inequitable to allow the acquisition of a new lease and thus deprive the assignor of his reserved interest as retained in his assignment.

In the case under consideration Rees received no consideration in cash or otherwise for his lease, except the reserved overriding royalty, which was dependent upon production. It is unreasonable to assume that Rees would assign his lease for no present consideration unless he felt that he could depend upon Briscoe to undertake the development of the lease.

The defendants rely largely upon Kile v. Amerada Petroleum Corp., 118 Okl. 176, 247 P. 681. That was an action for damages for breach of contract. Amerada had taken an assignment of an oil and gas lease covering twenty acres of land in Payne County. The assignment reserved a 1/8th overriding royalty to assignor. It was alleged that Amerada drilled wells on land adjacent to the twenty acre tract and drained the oil therefrom to plaintiff's damage as above stated.

The court examined the assignment and found that it contained no obligation on the part of the assignee to develop for oil and gas and that such obligation could not be implied, but must be found in the contract of assignment. A demurrer to plaintiff's petition was sustained. This decision was rendered in 1925 and has been cited in Patsy Oil & Gas Co. v. Baker, 127 Okl. 76, 259 P. 864, which is not in point here, and in Phoenix Oil Co. v. Mid-Continent Pet Corp., 177 Okl. 530, 60 P.2d 1054, 1060, 111 A.L.R. 504. In the last case mentioned the lessee had an option to pay rentals and had paid $15,000 cash for the assignment, which also provided for an additional $15,000 from oil produced. In the opinion it is said:

"* * * The $15,000 bonus stipulated to be paid the first party was not the entire consideration paid for the half interest in the leased premises, but there was a very substantial cash payment made at the time of the execution of the assignment besides the rental payments made by the second party from time to time in lieu of drilling."

Many other cases are cited by defendants but the facts are materially different from those before us in the case being considered. In several of the cases cited the assignments reserving overriding royalty as part of the consideration for the assignment was paid at the time the transfer took place. Most of the cases relied upon by defendants involved no confidential relationships between the parties.

 We think the dealings between Briscoe and Rees with respect to the Brouchoud leases and the fact that Briscoe had and was continuing to perform his part of his agreements with Rees have an important bearing upon the confidential relationship existing between these parties when Rees assigned his leases on the Perry tract with no mention of the fact that an override reserved was to apply to renewals or extensions of such leases. There is no evidence contrary to that of Rees as to his confidence in Briscoe and his associates. Had he doubted Briscoe he would no doubt have seen that such provisions were included in his assignments.

Again, under the contentions of defendants, Rees gave up his leases on the Perry land for no consideration whatever and must have believed that Briscoe would protect his interest. We conclude that the judgment of the trial court is against the clear weight of the evidence.

We find no merit in defendants' plea of limitations. It was 1953 that the plaintiff first learned that his overriding royalty interest would not be recognized by Briscoe. The leases reserving his interest were of record until 1953. It is also contended that the alleged oral agreement of Briscoe to drill upon the Perry tract after drilling two wells upon the Brouchoud tract was in violation of Section 137, 15 O.S.1951, dealing with the alteration of a written contract. It should be remembered that there was no written contract between the parties as to drilling or development—only a written transfer of the leases, and the oral agreement to develop covered a matter not mentioned in the transfer.

The judgment is reversed with directions to render judgment for Rees as prayed for, establishing his overriding royalty in 7⁄80th of the Perry tract and an accounting for his interest in production to date and judgment for such sum with interest from date received by Briscoe.

WELCH, C. J., CORN, V. C. J., and JOHNSON, BLACKBIRD and CARLILE, JJ., concur.

WILLIAMS, DAVISON, and JACKSON, JJ., dissent.

WILLIAMS, Justice (dissenting).

In this case, plaintiffs base their alleged right to a recovery upon two distinct theories. The first of such theories is, that their assignment of an oil and gas lease to defendant, with a reservation therein of an overriding interest, gave rise to an implied covenant that defendant would develop the leasehold, that is, drill an exploratory oil and gas well, within the term of the lease so assigned. No cases are cited in support of such theory, however, and it is well settled, in this jurisdiction at least, that as between the assignee and assignor of an oil and gas lease, no implied covenant to drill arises in the absence of an express covenant to that effect. Kile v. Amerada Petroleum Corp., 118 Okl. 176, 247 P. 681; Phoenix Oil Co. v. Mid-Continent Petroleum Corp., 177 Okl. 530, 60 P.2d 1054, 111 A.L.R. 504.

Plaintiffs' second theory was that defendants orally agreed with plaintiffs to a contemplated plan of development, whereby defendants would drill and complete a successive and continuous program of wells for the discovery and production of oil and gas, beginning with the Brouchoud No. 1 well, then proceeding eastward so that the second well would be drilled on the east 80 acres of the Brouchoud tract, which would follow immediately the completion of the Brouchoud No. 1 as a commercial producer, and then a well would be drilled and completed in substantially continuous drilling operations on the tract here involved; that this plan and agreement was conditioned upon commercial production successively in the wells contemplated, which did later occur, but clearly contemplated and included the drilling of the intended well upon the tract herein involved within the primary term of the leases then held by plaintiff and assigned to defendants.

Plaintiffs' evidence, however, which consisted of the testimony of plaintiff Rees and the testimony of the plaintiff Rodkey, fell far short of establishing any agreement or promise to drill a well upon the subject tract within the term of the oil and gas leases assigned. The testimony of the plaintiff Rees was to the effect that upon one occasion, defendant Powel Briscoe had said "I have got the rig out there, and I will drill all three of those wells right while the equipment is out there"; and on another occasion, defendant Powel Briscoe had said that "he would move his rig to Caddo County to drill one well, and that he would move it back up there on the Brouchoud or Perry tract"; that he, Rees, had every reason to believe that defendant would carry through as long as defendant

was getting commercial production in these wells, and that he would go ahead and develop the Perry tract; that it was his (plaintiff's) understanding at the time of the assignment that defendants would drill three wells in the area as long as sand body was there and as long as they were commercial producers; that it was the understanding of plaintiff Rees that after drilling the initial Brouchoud well, that the next well was to be drilled on the Brouchoud tract and that the general plan was to step east eighty acres at a time from the initial well on the west 80 acres of the Brouchoud tract, the next well to be on the east 80 acres of the Brouchoud tract and then the Perry tract as long as defendant was getting commercial production. The other plaintiff, Rodkey, testified in substance that he understood defendants would drill the wells "hand running" one to each 80 acres, east from the original well, but that the assignment of the Brouchoud leases and the assignment of the leases on the Perry tract were separate deals. Neither plaintiff testified that defendant promised to drill a well on the subject tract, the Perry tract, prior to the expiration of the leases assigned. Neither did either plaintiff testify that defendants promised that if they failed to drill a well on the subject tract within the term of the assigned leases, that defendant would acquire new leases and carry plaintiffs for a new override therein.

Defendants' testimony squarely contradicted that of the plaintiffs. Defendant Briscoe testified that he and his associates acquired the Perry tract after the Brouchoud lease was acquired in November of 1949, and that although he agreed to drill the Brouchoud well, which agreement was in writing, he did not agree to drill any wells on the Perry lease within the primary term or otherwise, nor did he agree to any plan of continued development of the two leases. Defendant Briscoe further testified that after drilling the Brouchoud well he was of the opinion that the next well on the east 80 acres of the Brouchoud lease would have been a dry hole. Defendants'

geologist testified that he was disappointed in the first Brouchoud well, which was completed in January of 1950, and that because the sand was tighter and shaling out to the east, it was his opinion that no further development should be undertaken toward the east for the Bartlesville sand production, which was the production that they were looking for at the time. Said geologist further testified that he had advised the defendant Briscoe of his opinion in this regard and had advised Briscoe against further drilling to the east of the Brouchoud No. 1.

With the evidence in this state of conflict, the trial court rendered judgment for defendants without making findings of fact and conclusions of law. The rule is that a general finding is deemed to include a special finding upon every issue of fact necessary to sustain the judgment rendered. Hitt v. Hitt, Okl., 258 P.2d 599; Wahby v. Renegar, 199 Okl. 191, 185 P.2d 184. The judgment of the trial court therefore necessarily determined that there was no oral agreement to drill a well upon the Perry tract within the primary term of the leases assigned. Such judgment is not clearly against the weight of the evidence, and therefore should not be disturbed by this court upon appeal. Hitt v. Hitt, supra; Preston v. Ross, 205 Okl. 164, 236 P.2d 244.

The majority opinion reverses the judgment of the trial court, but it is not clear upon what theory such reversal is entered. Such opinion does not hold that there was an oral agreement between the parties to drill a well on the Perry tract within the term of the assigned leases, but seems to assume that there was such an agreement, in the face of the trial court's holding to the contrary. It is apparent that plaintiffs themselves recognized what the majority opinion fails to recognize, that is, that before plaintiffs would be entitled to recover in this action they must first establish a duty on the part of the defendants and then a violation of such duty or obligation. Plaintiffs therefore advanced the two theories above discussed, that is, the implied covenant to drill, and the alleged oral

agreement to drill. As I have already shown, there is no merit in either theory and the judgment of the trial court should therefore be affirmed. The majority opinion, however, reverses the trial court and holds that plaintiffs are entitled to recover, but does so without sustaining either of plaintiffs' theories. The majority opinion, as I understand it, does not hold that there was any duty upon defendants to drill a well upon the Perry tract within the primary term of the lease assigned, nor does it point out any violation of any duty by said defendants. As I understand the majority opinion, it holds that plaintiffs had confidence in defendants, and that they had such confidence because defendants had carried out their written contract in the case of the Brouchoud tract, and that since defendants had done what they had agreed in writing to do in the case of the Brouchoud tract, they should therefore be required to do that which they had not agreed to do in connection with the Perry tract; that since defendants had agreed to drill the Brouchoud well and had drilled such well in compliance therewith, that plaintiffs had a right to expect defendants to drill a well or wells on the Perry tract without having agreed to do so. I am unable to follow such logic.

It should be remembered that plaintiffs' reserved overriding royalty interest in the Perry tract was reserved in the assignment of the three leases which expired in 1950, and that the reservation did not purport to extend to renewals and extensions of the leases so assigned. Such overriding interest, therefore, expired with the original leases. Hawkins v. Klein, 124 Okl. 161, 255 P. 570. Plaintiffs concede such to be the case, but nevertheless attempt to assert an interest in the new leases acquired by defendants at their own expense upon the theory that the same should be impressed with a constructive trust in favor of plaintiffs for the continuation of the same overriding royalty interest that plaintiffs had held in the original leasehold. The rule with reference to establishment of a constructive trust is well settled in this juris-diction. A constructive trust may be established by parol evidence, but the law, for the safety of titles, requires that the proof should be of the most satisfactory and trustworthy kind. The onus of establishing a constructive trust lies upon him who seeks its enforcement, and before a court of equity would be warranted in making a decree therefor, the evidence must be clear, unequivocal and decisive. Colbourn v. Bell, Okl., 294 P.2d 289; Preston v. Ross, 205 Okl. 164, 236 P.2d 244. The majority opinion completely ignores this rule, however.

The general rule relative to the relationship between assignor and assignee of an oil and gas lease is well stated in 24 Am.Jur. 590, Gas and Oil, sec. 82, as follows:

"Relationship arising from transfers—While the transfer of a lease does not ordinarily create any confidential relationship between the parties, this is not, of course, always the case. *The terms of the conveyance may be such as to impose upon the assignee or sub-lessee the duty of protecting the interests of the assignor or sub-lessor;* and, whenever they are of such character, he must comply with the general rules that govern the conduct of persons occupying a trust status, and any effort on his part to procure from the lessor rights antagonistic to those of the assignor will be defeated. Thus, when an assignment *expressly* provides that any extension or renewal of the lease shall be subject to the overriding royalty therein agreed upon, the courts will regard a new lease procured by the assignee as an extension or renewal of the old one, and charge it with the royalty so reserved, even though it was not granted until production under the former lease had come to an end." (Emphasis added.)

A similar conclusion is expressed in Summers Oil & Gas, Permanent Edition, Sec. 554, pages 320-321, wherein it stated:

"While the right to overriding royalty, or a sum of money paid out of

production of oil or gas, created in the assignment, does not survive the termination of the assigned lease, yet in a number of cases the assignor has claimed that the assignee, by permitting the lease to expire, or by surrender thereof, and the taking of a second lease from the lessor, has violated a relation of trust and confidence, and that the assignor should be entitled to such overriding royalty or money out of production under the renewal lease. *The mere assignment of an oil and gas lease creates no such fiduciary relation. If it is created, it must be by the terms of the assignment.* In a number of cases the courts have held that the provisions of the assignment did not create a fiduciary relation between the parties so that the assignor would be entitled to the payment of overriding royalties or other sums out of oil or gas produced under a second lease taken by the assignee. But where the assignment of a lease *expressly* provides that the reservation of an overriding royalty should apply to extensions, renewals or modifications of the lease that the assignee or his successors might secure, it was held that such provision created a relation of trust and confidence between the assignor and his assignees permitting the assignor to payment of the overriding royalty reserved in the assignment out of oil or gas produced under the second lease." (Emphasis added.)

See also Probst v. Hughes, 143 Okl. 11, 286 P. 875, 69 A.L.R. 929; Hivick v. Urschel, 171 Okl. 17, 40 P.2d 1077; Wier v. Glassell, 216 La. 828, 44 So.2d 882; Goocey v. Hopkins, 206 Ky. 176, 266 S.W. 1087; Howell v. Cooperative Refinery Ass'n, 176 Kan. 572, 271 P.2d 271; Henry v. Gulf Refining Co., 179 Ark. 138, 15 S.W.2d 979; Hawkins v. Klein, supra; and Phoenix Oil Co. v. Mid-Continent Petroleum Corp., supra.

Since the terms of the assignment from plaintiffs to defendants here involved imposed no duty of any kind upon defendants,

I am of the opinion that no fiduciary relationship was created between the parties and that the trial court was correct in so holding. In the two cases relied upon by the majority opinion, Probst v. Hughes, supra, and Hivick v. Urschel, supra, the terms of the assignment involved specifically provided for certain duties upon the part of the assignee, which duties the assignee violated and failed to perform. Such is not the case here, and these cases are not therefore in point. I therefore respectfully dissent.