R. BRANNAN and Bessie Brannan,
Plaintiffs,

v.

SOHIO PETROLEUM COMPANY, a
Corporation, Defendant.

Civ. No. 4045.

United States District Court
E. D. Oklahoma.
April 17, 1958.

Otey, Johnson & Evans, Ardmore, Okl., for plaintiffs.

Forrester Brewster, Muskogee, Okl., Embry, Crowe, Tolbert, Boxley & Johnson, Oklahoma City, Okl., for defendant.

RIZLEY, District Judge.

In the initial proceedings of this case in the trial court, Judge Eugene Rice sustained the defendant's motion to dismiss the plaintiff's complaint on the grounds that the complaint failed to state facts upon which relief could be granted. Upon appeal to the Court of Appeals the dismissal was first affirmed but on rehearing the decision was vacated and the case remanded.[1] In its original opinion, the Court of Appeals predicated its decision on the case of Rees v. Briscoe[2] which opinion never became final. In its final opinion the Court of Appeals predicated its decision upon the final opinion in the Rees v. Briscoe case[3] which the Supreme Court of Oklahoma handed down withdrawing its original opinion and substituting an opinion contra to its first holding.

The Court of Appeals in remanding this case instructed the trial court to explore the underlying facts for the purpose of determining whether they generated a fiduciary relationship between plaintiffs and defendant which required defendant to protect plaintiffs in respect to their overriding royalty interest in the leasehold estate after the new lease obtained from the owner became effective.

Upon return to the trial court the parties to the suit filed with the court stipulations as to the facts and agreed that no other facts could be determined in trial. Those facts and the facts admitted by the pleadings are in substance as follows:

Under date of October 25, 1949, Ralph Gilliam and Ella May Gilliam gave to plaintiffs two oil and gas leases, one covering a tract of land in Love County, Oklahoma, containing ten acres, and the other covering a tract in such county containing forty acres. The leases were for a primary term of five years, beginning October 25, 1949, and expiring October 25, 1954. On July 11, 1950, plaintiffs assigned the leases to the defendant. Each assignment contained a provision reserving to the assignors an overriding royalty of one-sixteenth of seven-eighths of all oil, gas, casing-head gas, distillate, and other hydrocarbons produced and saved from the land. On or about August 25, 1954, defendant obtained from R. E. Gilliam and Ella May Gilliam an oil and gas lease covering all of such land. The lease was dated August 25, 1954, and provided that it was subject to a lease or leases then on such land and should not go into effect until such then existing lease or leases terminated. Nothing was done to develop the premises for oil and gas prior to the expiration of the original leases; but subsequent thereto and after the new lease became effective, the premises were developed and production was obtained.

At the time of the assignment of the leases in question from plaintiffs to defendant, the defendant paid the plaintiff a cash consideration of $50 per acre which for the acreage involved amounted to $1,816.67.

At the time of the assignment in controversy other leases were likewise as-

1. Brannan v. Sohio, 10 Cir., 1957, 248 F. 2d 316, 319.

2. 1956, 27 Okl.B.A.J. 1942.

3. Okl.1957, 315 P.2d 758.

signed. Under three of these other leases so assigned, the plaintiffs are being paid an overriding royalty, production having been obtained during the primary term of the leases.

Nothing was said about the drilling of a well or wells on the leases in controversy at the time of the assignments.

It is also stipulated that in the face of objections from the defendant the plaintiff would testify if permitted by the Court:

"That at the time he assigned the leases involved in this action to Sohio he was first approached to transfer said leases for a straight cash consideration. He advised the purchaser that he had no other holdings in that immediate vicinity and would not consider giving an assignment without retaining an override. The retaining of the overrides was in no way incidental or secondary to Brannan in the transaction here involved but was of primary importance and he would not have made the assignments to Sohio otherwise."

The question for determination here is whether Rees v. Briscoe [4] stands for the proposition that a fiduciary relationship is created under the facts hereinbefore stated.

From a careful reading of that opinion, it is apparent that at least four factual elements found by the majority contributed to the finding of a fiduciary relationship between the assignor and the assignee.

*First:* The assignment in the Rees case was made for no consideration except for the reservation of the override.[5]

*Second:* There was evidence that Rees relied on the oral promise of Briscoe to drill wells on the leases assigned.[6]

*Third:* At the time Briscoe was attempting to obtain the renewal of the leases, the owner of the minerals first offered a renewal to Rees who declined it in favor of Briscoe.[7]

*Fourth:* Briscoe had fully recognized Rees' reserved override in a previously assigned lease upon which a producer had been drilled.[8]

It is not clear from the opinion in the Rees v. Briscoe case what minimum facts would be necessary for the finding of a fiduciary relationship between assignor and assignee. However, when we compare the facts stipulated to in the present case with the facts in Rees v. Briscoe it is apparent that virtually all the indicia of trust relied upon by the Oklahoma Supreme Court are absent herein.

*First:* There was a consideration of $50 per acre paid the plaintiff for the assignment in addition to the override. Assuming that the reservation of the override was the primary consideration and that plaintiff would not have made the assignment without the override, there is, however, nothing to show that the cash consideration was nominal or inconsequential. Therefore the Court finds that such $50 per acre was at least a material consideration in the transaction.

*Second:* It is specifically stipulated that nothing was said about drilling a well on the lands involved in these assignments at the time plaintiffs assigned the leases to defendant.

*Third:* There is no proof herein that plaintiffs had an opportunity to obtain re-

4. Id. For excellent commentaries on the effect of the Rees v. Briscoe decision, see Kuntz, 7 Oil and Gas Reporter 1464 (1957) and Student Note, 11 Okl.L.Rev. 92 (1958).

5. This fact is emphasized in the opinion, 315 P.2d at page 763; the syllabus of the opinion refers to this point as follows: "Where *sole* consideration for assignment of nonproducing oil and gas leases is to be paid assignor in oil and gas produced from lands covered by said leases, a fiduciary relationship is created between such parties for the purpose of attaining the ultimate object of the contract." (Emphasis added.)

6. Rees v. Briscoe, Okl.1958, 315 P.2d 758, at page 760.

7. Id., 315 P.2d at page 761.

8. Id., 315 P.2d at page 763.

newal leases from the lessors which opportunity was waived in reliance upon the defendant's recognition of their original override.

*Fourth:* There had been no previous dealing between plaintiffs and defendant by which the plaintiffs would have been led to believe that the override would be extended to subsequent leases.

██ The decision in Rees v. Briscoe is an exception to the general rule that an overriding royalty interest expires when the lease expires absent any provision in the assignment to the contrary.[9] The plaintiffs herein have not come within that exception by proving the existence of a fiduciary relationship and the burden is upon plaintiffs to do so.[10]

Judgment will therefore be entered for the defendant.

9. Gordon v. Empire Gas & Fuel Co., 5 Cir., 1933, 63 F.2d 487; Hawkins v. Klein, 1927, 124 Okl. 161, 255 P. 570; Summers, Oil & Gas, Sec. 554, pp. 320 321 (1938); 24 Am.Jur. 590, Gas & Oil, Sec. 82.

10. Colbourn v. Bell, Okl.1956, 294 P.2d 289; Preston v. Ross, 1951, 205 Okl. 164, 236 P.2d 244.