Charlotte Meier YOUNG, in person and as Assignee in trust for her minor sons, Norbert Nelson and Ulrich Waldemar Young, Plaintiff-Appellant,

v.

FIDELITY UNION LIFE INSURANCE COMPANY, a Stock Company, Dallas, Texas, Defendant-Appellee.

No. 77–1606.

United States Court of Appeals, Tenth Circuit.

April 30, 1979.

Rehearing Denied June 15, 1979.

Wesley R. Thompson, Sapulpa, Okl., for plaintiff-appellant.

James M. Sturdivant, Tulsa, Okl. (Elsie Cox Draper and Gable, Gotwals, Rubin, Fox, Johnson & Baker, Tulsa, Okl., on brief), for defendant-appellee.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

The issue here is whether the trial court erred in holding that a policy of life insurance issued to one Thomas Alexander Young by Fidelity Union Life Insurance

Company had lapsed for non-payment of premiums prior to Young's death. We hold that the trial court did not err, and we therefore affirm.

Charlotte Meier Young, in her own name and as a so-called "assignee in trust" for two minor sons, brought the present action against Fidelity Union on a policy of life insurance issued to another son, Thomas Alexander Young. The latter was shot and killed by a robber on February 14, 1975. One issue formed by the pleadings was whether the policy of insurance was in force and effect on the date of the insured's untimely death or, on the contrary, had lapsed because of non-payment of premiums. Both Young and Fidelity Union filed motions for summary judgment supported by affidavits and depositions. The trial court granted Fidelity Union's motion and denied Young's. The latter now appeals the judgment entered in favor of Fidelity Union.

On September 16, 1974, Thomas Alexander Young completed and executed an application for life insurance with Fidelity Union through its local Oklahoma agent. The application was for life insurance in the amount of $20,000, with double indemnification in the case of accidental death and with a provision for waiver of premiums in the event of disability. On the date that Young completed the application, he gave the local agent a money order in the amount of $30.06 as payment for the first month's premium. The money order was forwarded to Fidelity Union along with the application. The application contained the following language concerning the effective date of the policy:

I agree that there shall be no liability hereunder until a policy shall be issued and manually delivered while the state of health of the Proposed Insured is as stated in this application and the first premium actually paid. If the full first premium is paid at the time of this application and in exchange for the Conditional Receipt bearing the same number as this application and if on that date the Proposed Insured was, in the opinion of the Company's authorized officers at its Home Office, insurable and acceptable under the Company's rules and practices for the policy, in the amount, on the plan, and otherwise exactly as applied for, then the insurance shall be effective from this date or the date of the last of any medical examinations or questionnaires required by the Company, if later, subject to the terms of the policy applied for and of the Conditional Receipt.

In exchange for the first month's premium, the local agent gave Young a so-called Conditional Receipt which bore the same number as the application and contained the following language:

1. This payment is made and accepted subject to the following conditions: (1) if settlement for the first full premium is made at the time of making this part of the application and (2) if on that date Proposed Insured was, in the opinion of the Company's authorized officers at its Home Office insurable and acceptable under the Company's rules and practices for the policy in the amount, on the plan, and otherwise exactly as applied for; and if both conditions are met then the insurance shall be effective from date of this application, or the date of the last of any medical examinations or aviation or occupational questionnaires required by the Company in connection with this application, if later.

On September 18, 1974, a policy of life insurance was issued to Young by Fidelity Union in the face amount of $20,000, with a double indemnity provision in case of accidental death and with a provision for waiver of premium in the event of disability. The policy was mailed by Fidelity Union on October 1, 1974, to the local agent for delivery to Young. Young was then in military service and stationed at Lackland Air Force Base in Texas. The local agent wrote to Young informing him that the policy had been received.

Fidelity Union's pre-authorized check drawn on Young's account in the Utica National Bank and Trust Company, Tulsa, Oklahoma, for payment of the monthly pre-

mium due on October 18, 1974, was returned unpaid, marked "account closed." The local agent then sent a new pre-authorized check card to Young in Texas, and also advised Young's parents of the closed account and of his request that a new pre-authorized check card be completed. Instead of a new pre-authorized check card, the local agent received a check from the insured's mother, Charlotte Meier Young, the plaintiff and present appellant, dated November 18, 1974, in the amount of $30.05, payable to Fidelity Union. This payment was forwarded to Fidelity Union and deposited.

The local agent later forwarded the policy to Young at his mother's home address as he was unable to arrange a personal appointment with the insured who, as indicated, was then serving in the United States Air Force. The policy was received at the home of Young's parents in Kiefer, Oklahoma on or about December 15, 1974, and given to the insured by his mother on December 22, 1974. No further premium payments were made, and notices that the policy had lapsed and requests for a new pre-authorized check card were sent to the insured on January 3, 1975, and February 5, 1975. Young died on February 14, 1975.

The policy provided for a 31-day grace period which continued coverage for 31 days after a premium became due but was unpaid, and further provided, however, that the policy would be cancelled and forfeited if the premium due had not been paid by the end of the grace period.

It is the position of Fidelity Union that the effective date of the policy was September 16, 1974, the date on which Young made application with Fidelity Union for the issuance of an insurance policy, and that only two monthly premiums had been paid and received. Thus, according to the insurance company, the policy was in effect for only two months, plus the additional thirty-one day grace period, and that coverage had therefore lapsed on December 17, 1974, some 59 days prior to the insured's death on February 14, 1975.

It is the plaintiff's position that, under the provisions of the application, the insurance policy was not in force and effect until it was "manually delivered" to the insured on December 22, 1974. Therefore, according to the plaintiff, the two monthly premium payments, which were received by Fidelity Union, i. e., the one made by the insured on September 16, 1974, when he executed the application, and the second made by the insured's mother on November 18, 1974, provided for coverage for two months subsequent to the manual delivery of the policy on December 22, 1974. Under this approach, the policy of insurance would have been in force and effect on February 14, 1975, the date of the insured's death.

■ Where an insurance policy contains ambiguous or equivocal language, it should be interpreted favorably to the insured. *Unigard Ins. Co. v. Studer,* 536 F.2d 1337, 1339 (10th Cir. 1976). However, a court cannot resolve an ambiguity where none exists, and an unambiguous insurance contract, like any other contract, should be enforced as written. *Hercules Cas. Ins. Co. v. Preferred Risk Ins. Co.,* 337 F.2d 1, 3 (10th Cir. 1964).

■ We find no ambiguity in the language appearing in the application relating to the effective date of the policy. The first sentence in the excerpt from the application set forth above provides that there shall be no liability until a policy has been issued and manually delivered to the insured. The second sentence in that quotation, however, provides for a method whereby the insured may obtain immediate coverage. The second sentence, provides, in essence, that the insurance shall be effective from the date of the application if the first premium is paid in full and the policy is issued exactly as applied for. The Conditional Receipt given the insured by the agent contained language substantially similar to the language in the application concerning immediate coverage.

In the instant case, Young paid the first month's premium on the same date that he executed the application. Such is a strong indication that the insured himself believed

that he was covered as of that date. The policy which Fidelity Union issued two days later is, in our view, exactly what Young had applied for, i. e., life insurance in the amount of $20,000, with double indemnity provisions and a waiver of premium payments in case of disability.

It is plaintiff's contention that the policy issued by Fidelity Union was not *exactly* as applied for because of a premium differential. As indicated, the local agent had informed Young that the monthly premium was $30.06, and Young had given the agent a money order in that amount. The policy actually issued called for a monthly premium in the amount of $30.05. We deem this difference in premium between the application and the policy to be *de minimus.* Actually, if we understand it correctly, the one cent difference in the monthly premium is in favor of the insured. Also, the fact that the policy was dated September 18, 1974, does not constitute a variance from the application. In short, the policy issued was as applied for.

It is plaintiff's further suggestion that the language in the second sentence in the quotation from the application set forth above did not in any way obligate Fidelity Union to issue the policy applied for and was therefore illusory in nature. We do not agree. Under the terms of the application, Fidelity Union was bound to issue the policy as applied for, assuming that certain stated conditions were met. In any event, this matter is somewhat academic, inasmuch as Fidelity Union did in fact issue the policy. Plaintiff is not seeking to disavow the contract and to obtain a return of the premiums paid. Rather, she is suing on the policy and is bound by the stated terms under which it was issued.

Based on the undisputed facts, the effective date of the insurance policy was September 16, 1974, and as only two monthly premiums were paid, the policy by its terms had lapsed when the insured met his untimely death on February 14, 1975. The trial court, under the circumstances, did not err in granting summary judgment for Fidelity Union.

Judgment affirmed.